Louisville, Cincinnati & Lexington Railroad Co. v. Sullivan.

CASE 102—ORDINARY—FEBRUARY 28, 1884.

# Louisville, Cincinnati & Lexington Railroad Co. v. Sullivan.

APPEAL FROM OLDHAM CIRCUIT COURT.

1. The ground for a new trial, that the damages assessed by the jury are excessive, is not assigned for error, and can not be considered.

2. That "the court erred in overruling appellant's motion for a new trial" is too general to raise any question for decision.

3. The error assigned, that the court refused to permit the conductor to prove that he would not have put the appellant off the train if he had known he could not walk, can not be considered, because appel.ant. failed to make any avowal that the witness would so testify.

4. For the same reason the error assigned that the court refused to permit appellant to prove that he was a dissipated man, will not be considered.

5. While the right generally of railroad companies to put off their trains persons who refuse to pay their fare, when requested by the conductor, may be conceded, that right must be exercised with proper regard to the physical and mental condition of the person, and also to the surrounding circumstances.

6. A person refusing to pay his fare upon the demand of the conductor becomes a trespasser, yet to eject him from the train when he is in such physical or mental condition as that serious bodily harm may result from it, is culpable negligence, and is actionable.

7. When the negligence of the defendant is the proximate cause of the injury, but that of the plaintiff is remote, consisting of some act or omission not occurring at the time of the injury, the action can be maintained, although the plaintiff is himself not without fault.

HARWOOD & FRENCH AND A. BARNETT FOR APPELLANT.

The court erred in refusing to allow appellee to prove by appellant his dissipated habits, and also erred in refusing to permit appellant to prove by the conductor that if he had known appellee was drunk, he would not have put him off the train.

The question to appellee states the fact, and therefore the bill of exceptions shows the fact we expected to prove.

The court erred in permitting proof as to the intoxication of appellant when he was put off the car.

Further erred in refusing to modify the instruction given for appellant upon the subject of his intoxicated condition.

The question of negligence is a mixed question of law and fact. The proof for appellee never reached the point that the court should have permitted the case to go to the jury.

Louisville, Cincinnati & Lexington Railroad Co. v. Sullivan.

The verdict is not sustained by the evidence, and the court erred in refusing to render judgment for appellant on the special findings.
(19 Ohio St. Rep., 151; 24 Vt., 487; Hutchinson on Carriers, sec. 555; 81 Ills., 245, 292; L. & N. R. R. Co. v. Fox, 11 Bush, 495; Sullivan v. Lou. Bridge Co., 9 *Ib.*, 90; P. & E. R. R. Co. v. Hoehl, 12 *Ib.*, 43; Watson v. Crow, 2 Duv., 148.)

BULLOCK & BECKHAM for appellee.

Appellant's objection, on the ground that the court refused to permit Watson, the conductor, to prove that he would not have ejected appellee from the train if he knew that the latter was drunk, and the refusal to permit appellee to answer the question as to his habits, can not be considered by this court, because appellant made no avowal of what he could prove by either. Without such an avowal this court, as it has repeatedly held, will not look into the question. (Brown v. The Commonwealth, 14 Bush, 410; Tippee v. same, 1 Met., 6; Bowles v. Lane, 3 *Ib.*, 311; Chrystal v. same, 9 Bush, 669; Nichols v. same, 11 *Ib.*, 575.)

It has been held by this court that a special verdict should be liberally construed. (4 Dana, 271; Farmer v. Gregory, 78 Ky., 475; Civil Code, sec. 756.)

That "the court erred in overruling appellant's motion for a new trial" is too general, and will not be considered. (Maxwell v. Dudley, 13 Bush, 403; O'Reargen v. Sullivan, 14 *Ib.*, 185; 9 *Ib.*, 90.)

There is no error in the instructions. The petition and proof show wilful and culpable negligence on the part of the conductor in putting appellee off the train in his intoxicated condition. (Sanders' Neg., 58; 12 Bush, 39; 8 Dana, 9; *Ib.*, 195; 3 *Ib.*, 43; 24 Vt., 487; 37 Cal., 400; Railroad Co. v. Vallely, 7 Law Rep.; Smith v. Morrow, 5 Litt., 218; Tevis v. Eliza, 7 Dana, 404; L. & N. R. R. Co. v. Fox, 11 Bush, 495.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellee to recover damages for personal injuries sustained on account of being unlawfully, wrongfully, and by the gross negligence of the conductor of appellant's train of cars, ejected therefrom and exposed to freezing weather while in a helpless condition.

From the evidence it appears that appellant, on the day he was ejected from the train, which was the 25th of December, walked from Cropper's station, on the line of appellant's road, where he was staying temporarily, to Christiansburg, another station, where he obtained whisky, and,

as the evidence satisfactorily shows, became so intoxicated as to stagger when walking, and was in that condition when, between 3 and 4 o'clock in the afternoon, he got on the train for the purpose of returning to the first named station, distant two and one-half miles; that when the train had gone between one-half and three-fourths of a mile he was approached by the conductor in the baggage car, where he had improperly gone, and requested to pay his fare, which was twenty cents, and refusing, or, as he says, being unable to do so, the train was stopped, and he was compelled to leave the train.   He states that when he stepped from the car he fell down upon the snow, which other witnesses testify was at the time eight or ten inches deep, and remained there until next morning, not remembering what occurred in the meantime.

There is some  conflict in the testimony as to the precise place the train left him, and also whether he was at the time standing or lying, one of the witnesses, a brakeman, testifying that he was standing, and said to him, "You can kill me, if you like."   But about one hour and a half afterwards, near the time for the train going toward Christiansburg to pass, and about two hundred and fifty yards toward Cropper's from the place where the conductor testifies he was put off the train, he was discovered by one of the witnesses lying across the track, helpless and nearly unconscious, with a quart bottle nearly full of whisky, who pulled him off the track, but being unable to remove him from the place, left him.

By reason of his exposure for such length of time to the cold weather, the temperature of which was, as stated by several witnesses, between eight and ten degrees below zero, his feet, hands, shoulder, and parts of his legs and of one

.arm, were frozen, causing intense suffering and confinement for several months, and the necessary amputation of his toes, several of his fingers, and part of his heel.

Judgment having been rendered in accordance with the verdict of the jury for five thousand .dollars, the railroad company has appealed, and assign various errors.

One of the grounds for a new trial was that the damages assessed by the jury. are excessive, and appear to have been given under the influence of prejudice.

As this ground is not assigned as an error, it can not be considered on this appeal. Nor can we consider the fourth assignment, which is that the court erred in overruling the motion for a new trial; for, as has been heretofore held, it is too general to raise any question for decision.

The first error assigned is that the court improperly excluded evidence, as set forth in the grounds for a new trial.

The first of the grounds thus in general terms referred to in the assignment is, that appellant was not permitted to prove by the conductor that he would not have put appellee off the train if he had known he could not walk, or was mentally or physically in a helpless condition.

Even if the evidence had been relative and competent, it can not be now considered by the court, because counsel having failed to avow that the witness would so testify, it never was, in fact, passed on by the lower court.

For the same reason this court can not consider the other ground for a new trial, viz.: that the court refused to allow appellant to prove by appellee that he was a dissipated man, and that he was in the habit of or frequently laid out all night.

The second assignment is that the court erred in refusing to render a judgment for defendant upon the special verdict of the jury.

As this as well as the third assignment, which refers to the action of the court in giving and refusing instructions to the jury, involve the question of appellee's right to maintain the action at all, we will consider them together.

Instruction No. 1, given at the instance of appellee, is as follows: "Although the jury may believe from the evidence that plaintiff got on defendant's cars to go from Christiansburg to Cropper's station, and that he had no ticket—and when his fare was demanded he said he had no money, and neither paid his fare nor delivered to the conductor a ticket—yet if they further believe from the evidence that he was then in such a state of intoxication as to render him mentally or physically incapable of taking care of himself, and he was then in such a helpless condition that to put him off said train would necessarily expose him to death, or great danger of being frozen, and that defendant's agents in charge of said train at the time knew plaintiff's helpless condition and the danger he would be exposed to, being then and there ejected from said train, then they should find for plaintiff such compensatory damages as he may have sustained thereby, as were the necessary and proximate results of his having been put off the train, not exceeding $25,000."

Two instructions were asked by appellant, but as one of them was given so modified as to harmonize with the one given at the instance of appellee, and the one refused is the reverse of it, we need not quote them.

The following facts were found by special verdicts of the jury:

1. That though requested, appellant, while on the train, refused to either pay his fare or deliver to the conductor his ticket.

2. He was at the time intoxicated, and in such a helpless

condition as to be incapable of taking care of himself, and the conductor knew it when he put him off.

3. The conductor in ejecting him from the train used no more force than was necessary for that purpose.

From the facts found by the jury and the evidence in the case, it is clear that even slight diligence and care on the part of the conductor would have enabled him to prevent the injury done to appellant.

It is clear, also, that the act of the conductor was within the scope and in the course of his general authority, and hence appellant must be held responsible for whatever liability attaches thereto.

It being thus established that at the time appellee was put off the train he was himself a trespasser, and that the calamity which befell him was brought on, in part at least, by his own conduct in getting drunk, the question that arises is, whether the act of the conductor is to be held in law, as it is in fact, gross negligence for which appellant may be made liable.

The right generally of railroad companies to put off their trains persons who refuse to pay their fare, when requested by the conductor, may be conceded; but does it follow that this right may be exercised in such a manner, under such circumstances, or against a person in such mental or physical condition as that death or serious bodily harm will necessarily, or even probably, result from putting him off?

It is true that appellee, by refusing to pay his fare, became technically a trespasser; but it is well settled that a party may, in some cases, recover for the gross negligence of another, notwithstanding he may have been a trespasser upon the rights of the other at the time he received the injury.

"Negligence or *misconduct* on the part of the plaintiff does not prevent him from recovering damages in those cases where his negligence or misconduct has not been the immediate co-operating cause of the injury he complains of." (1 Addison on Tests, 495.) The rule by which to determine the right of recovery in such cases is, that when the negligence of the defendant is the proximate cause of the injury, but that of the plaintiff is remote, consisting of some act or omission not occurring at the time of the injury, the action can be maintained, although the plaintiff is not without fault himself. (Kernhacker v. C., C. & C. R. R. Co., 3 Ohio St., 172; Isbel v. N. Y. & N. H. R. R. Co., 27 Con., 393.) And by this court it has been repeatedly held that although the plaintiff suing for an injury resulting from gross negligence may have himself been guilty of negligence, nevertheless, if the injury might have been avoided by the proper care of the defendant, such co-operating negligence of the plaintiff will not exonerate the defendant.

In the able opinion delivered in a leading case (Isbel v. The New York & N. H. R. R. Co.), just cited, the court said: "A remote fault in one party does not, of course, dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demands this; and it is no answer for the neglect of it to say that the complainant was first in the wrong, since inattention and accidents are, to a greater or less extent, incident to human affairs. Preventive remedies must, therefore, always be proportioned to the case, in its peculiar circumstances, to the imminency of the danger, the evil to be avoided and the means at hand to avoid it. And herein is

no novel or strange doctrine of the law. It is as old as the moral law itself, and is laid down in the earliest books on jurisprudence. A boy enters a yard to find his ball or arrow, or to look at a flower in the garden; he is bitten and lacerated by a vicious bull-dog; still he is a trespasser, and if he had kept away, would have received no hurt; nevertheless, is not the owner of the dog liable? A person is hunting in the woods of, or crossing a pasture of, his neighbor, and is wounded by a concealed gun. Is he in such case remediless because he is there without consent? Or an intoxicated man is lying in the traveled part of a highway, helpless, if not unconscious; must I not use care to avoid him? May I say that he has no right to incumber the highway, and therefore carelessly continue my progress, regardless of consequences? Or if such man has taken refuge in a field of grass, or hedge of bushes, may the owner of the field, knowing the fact, continue to mow on or fell trees as if it was not so? Or if the intoxicated man has entered a private lane or byway, and will be run over if the owner does not stop his team, which is passing through it, must he not stop them? It must be so, that an unnecessary injury, negligently inflicted in these and kindred cases, is wrong, and therefore unlawful. If assailed, a man may do what is necessary to defend himself against the assault, but he may not become himself the assailant. He may defend his property, but he may not, in doing it, make use of unnecessary violence, and cease to use all care as to the injury he inflicts. The duties which men owe to each other in society are mutual and reciprocal, and faulty conduct on the part of another never absolves one from their obligations, though such conduct may materially affect the application of the rule by which this duty is to be determined in the particular instance."

The principles laid down and the illustrations given in the opinion just quoted from are correct and applicable to this case.

In the case of Johnson v. The C., R. J. & P. R. R. Co. (58 Iowa), the plaintiff was removed from the waiting-room of a railroad station by the agent of the defendant. His shoulder was dislocated either from a fall from the door, out of which the agent pushed him, or by a fall after he landed on the platform. The plaintiff was not in the waiting-room awaiting an outgoing train, to take passage, or for any other purpose for which a waiting-room at a station is kept open to the public. He had no right to remain there after being requested by the agent to leave it. He refused the request to leave before any violence was used toward him, and was drunk and disorderly. In the opinion delivered in that case the court said: "The rule that carriers of passengers are liable for the neglect, or wrongful acts of their servants or employes, does not always depend upon the fact that the carrier *owes a duty, or is under some obligations to the party injured.* When a person is found upon a train, who refuses to pay his fare, the company owes him no duty, and he may be removed; but if in removing him he is wrongfully injured by personal violence, or by being thrown from the train when in motion, or the like, he may recover from the company for his injuries. This is no more than the application of the ancient rule that if one person come into the dwelling-house of another, without right, after requesting him to depart, and his refusal to comply with the request, he may be removed by gently laying hands upon him and using such force as is reasonably necessary to affect the object; but if excessive force be used, the action is a wrongful assault."

Louisville, Cincinnati & Lexington Railroad Co. v. Sullivan.

The case of Kline v. C. P. R. R. Co. (37 Cal., 400) was where a boy got upon a moving train as it passed his resi-dence, with intent to enjoy a free ride for a short distance. The conductor, either by threatening or pushing, caused him to fall from the train while in motion, and a car-wheel to run over his leg, crushing it so as to necessitate amputa-tion. The court held that "the conductor doubtless had the right to eject him by force, if force was necessary, but he was bound to exercise the right with ordinary care and prudence, and he had no right to eject him under circum-stances which would endanger his personal safety. If the train was going at a speed which would render it unsafe for him to leave the car, it was the duty of the conductor, if determined to put him off, to stop, or slow up sufficiently to allow him to descend in safety by the exercise of reasonable care and prudence on his part. Although his entry upon the car was a trespass, *yet, if it was an accomplished fact be-fore the conductor attempted to interfere, his entry did not directly conduce to the injury which he sustained, but was, in the sense of the rule under consideration, only its remote cause, and did not, therefore, absolve the conductor from the duty of observing reasonable care and prudence in putting him off the train.*"

In the case of Wiymire v. Wolf (52 Iowa, 533) the plain-tiff's intestate, Dunn, was an habitual frequenter of the saloon kept by the defendant, who sold him intoxicating liquor, which caused him to be drunk, and while he was in a state of helpless intoxication the defendant expelled him from his saloon at a late hour of the night, and Dunn being then intoxicated, died of cold and exposure. The court held: "If it should be conceded that Dunn contributed to his death by drinking until he became drunk and uncon-

scious, it would not follow that the plaintiff would not be entitled to recover. If a person lies down upon a railroad track in a state of helpless intoxication, the company will not be justified in running a train over him if it can be avoided in the exercise of reasonable care. If after the company should be guilty of negligence whereby the exposed person should be injured, the negligence of the company would be deemed the proximate cause of the injury. So if the defendant negligently subjected Dunn to exposure to his injury, knowing that he was unconscious, or even helpless, the defendant can not escape liability on account of Dunn's negligence prior to the wrongful acts whereby Dunn was subjected to exposure, however great Dunn's negligence may have been in allowing himself to become intoxicated."

That case is so nearly like this that the reasoning which may be applied to one is applicable to the other, and if correct, as we believe it is, it must be regarded decisive of the question involved here.

If in defense of either person or property a party uses more force than is necessary, the defense degenerates into aggression, and the party becomes a wrong-doer and liable for the unnecessary injury inflicted, whether done intentionally or negligently. The language of the law is *moliter manus imposuit.*

We do not understand this injunction as applying merely to the character of weapons that may be used in defense of the person, or the degree of propelling force applied in removing a trespasser from a party's premises; but it is intended to apply and govern as to the manner, and circumstances in which and condition of the parties, when the right to protect one's person and property may be exercised. Thus

force might be applied legally to a strong, vigorous man, when the danger to the person was imminent, or the value of property or rights threatened or invaded great, which would become wanton cruelty or gross negligence in the case of a child, imbecile, or helpless drunken man.

In this case, if the evidence and the special findings of the jury are to be believed, appellant's agent and employe, if he did not use more actual force than was necessary to expel appellee from the train, did use it under circumstances and at a time when the consequences ordinarily would be as injurious as when, in attempt to remove a trespasser from his dwelling-house, the owner should shove him from an upper story, or lead him into a pitfall or well, or when a person is pushed off a fast-moving train.  In every such case the party would be justly chargeable with negligence, and held liable therefor, the fault or negligence of the person injured being remote, and therefore affording no defense to an action brought for the injury resulting.

Applying these principles, which are in accordance with the authorities, and sustained by the necessities of society and the analogies of the law, the instruction of the court, which we have quoted, was right, and it was not error to overrule the motion to render judgment for the appellant upon the findings of the jury.

The judgment is affirmed.