# Richmond.

## SEABOARD AND ROANOKE RAILROAD CO. v. JOYNER'S ADM'R.

### DECEMBER 12, 1895.

1. RAILROADS—*Personal Injury—Sufficiency of Declaration—Case at Bar.*—
   A declaration which charges that the plaintiff's intestate walked
   down the track of defendant railroad company a distance of 300
   yards, stopped and sat down on the track, in plain view of a station
   of the defendant at which one of its engines and trains was stand-
   ing; that the defendant negligently ran its engine and train upon
   the body of intestate, being constantly in view from the time it left
   the station till it struck him; that intestate was clearly and plainly
   within seeing distance of the employees in charge of the train; that
   the intestate was struck a fatal blow by said train, from which he
   died; and that his death was caused by the wrongful act of defend-
   ant company, states a proper case for recovery by the plaintiff.

2. RAILROADS—*Personal Injuries—Contributory Negligence—Duty to Tres-
   passers.*—In an action to recover damages for a personal injury in-
   flicted by a railroad company, although the plaintiff may have been
   guilty of negligence which contributed to the accident, he is, never-
   theless, entitled to recover, if, after discovering his peril, the de-
   fendant, by the exercise of proper care and due diligence, could
   have avoided the mischief which happened; and this is true though
   the plaintiff was a trespasser. A railroad company does not owe to
   trespassers the duty of foresight to guard against their negligence,
   but, when their peril is discovered and brought home to the com-
   pany, the duty to avoid injury to them attaches, and should be
   measured and limited only by the higher and more imperative
   duties they owe to others.

3. INSTRUCTIONS—*Hypothetical Case—Lack of Evidence to Support.*—An
   instruction which is based on a hypothetical case, not supported by
   the evidence, or omitting material portions thereof, and which tends
   to mislead the jury, should not be given.

4. RAILROADS—*Exclusive Use of Track—Public Crossing—Trespassers—*
*Contributory Negligence.*—Except at public crossings and other places
where the public have the right to use railroad property, a railroad
company has the exclusive right to the uninterrupted use and en-
joyment of its road-bed, track, and other property. It owes no
duty to trespassers, but cannot with impunity inflict on them reck-
less or wanton injury. The duty of provident circumspection, which
foresees and forestalls danger, is due to passengers only. But when
the peril of a trespasser is discovered, it then becomes the duty of
the company to do all that can be done, consistently with its higher
duty to others, to save him from the consequences of his own im-
proper act, regardless of whether he was guilty of contributory
negligence or not. Under the evidence in the case at bar the trial
court properly refused to set aside the verdict as contrary to the law
and the evidence.

Error to a judgment of the Circuit Court of Southampton
county, rendered November 16, 1892, in an action of tres-
pass on the case, wherein the defendant in error was the plain-
tiff, and the plaintiff in error was the defendant.

*Affirmed.*

The third count in the declaration was as follows:

" And for this also, to-wit: That on the 24th day of De-
cember, in the year 1890, and for a long time before that
day, the defendant company was and had been operating a
railroad in the said county of Southampton, over which it
operates steam locomotives to propel cars and coaches for the
purposes of transporting passengers and freight; and that on
the said 24th day of December, 1890, said defendant carried
said Sinclair Joyner, contrary to the expressed wishes and
requests of his wife, from Branchville, a station on its road
in said county, to some point north, and on the same day
brought him, the said Sinclair Joyner, back to said Branch-
ville station about noon, under the influence of ardent spirits,
and, when thus landed at said Branchville station, he, the
said Sinclair Joyner, proceeded to walk from said station

down the said railroad, and proceeding thus a short distance, to a point on said road about three hundred yards south of said Branchville station, stopped and sat down on said railroad track, and while he was thus sitting on said railroad track the local freight train of said defendant was at said Branchville station, standing still on said railroad track, plainly within sight of said Sinclair Joyner, then and there being on said track as aforesaid; the said defendant carelessly and negligently, and with great force and violence, ran its said engine in and upon said Sinclair Joyner's body, being then and there constantly, from the time the said engine moved off from said Branchville station till it ran in and upon the body of said Sinclair Joyner, clearly, easily, and plainly within seeing distance of the employees and agents of said defendant who were in charge of said engine, then and there giving to said Sinclair Joyner several fatal and mortal wounds, of which he died, and that his death was then and there caused by said wrongful act, neglect, and default of said defendant. Wherefore the said plaintiff, administrator of said Sinclair Joyner,. deceased, says he is entitled to recover damages to the amount of $10,000."

The opinion states the case.

*Watts & Hatton*, for the plaintiff in error.

*W. S. Holland, J. B. Prince*, and *Jackson Guy*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is an action of trespass on the case, brought in the Circuit Court of the county of Southampton by Joyner's administrator against the Seaboard and Roanoke Railroad

Company, to recover damages for the death of the plaintiff's intestate, caused, as alleged, by the negligence of the defendant company. The declaration contains five counts. The defendant appeared and demurred to the whole declaration, and to each count thereof, and the court below overruled the demurrer, and, a judgment having been rendered against the defendant, the case was brought here upon a writ of error.

Only the demurrer to the third count is here insisted upon. From this count it appears that Sinclair Joyner, starting at Branchville station, walked down the track of the defendant company about 300 yards, stopped, and sat down on the track; that the local freight train of the defendant was then at Branchville station, plainly within sight of Joyner; and that the defendant company negligently ran its engine upon Joyner's body, being then and there constantly, from the time the engine moved from Branchville station up to the time of the accident, clearly and plainly within seeing distance of the employees of the company who were in charge of the engine, thereby giving Joyner fatal and mortal wounds, of which he died, his death being caused by the wrongful act of the defendant company.

In *Baltimore and Ohio R. R.* v. *Sherman's Adm'r*, 30 Grat. 602, the first count in the declaration charged that the defendant company, operating a certain railroad for the purpose of running steam locomotive engines and coaches on and over the same, did carelessly and negligently, and with great force and violence, run and drive its engine upon and against Nathan G. Sherman, there then being, and thereby, then and there, with said engine and coaches, did so greatly wound said Nathan G. Sherman that, by reason thereof, he then and there died, and his death was caused by the said wrongful act, neglect, and default of said railroad company, wherefore damages were claimed. Upon a demurrer, the count was held good, Judge Moncure delivering the opinion, in which the whole court concurred.

It is obvious that the count under consideration in this case, the substance of which has been given, states a stronger case against the plaintiff in error than the count in Sherman's case, in this, that it avers that from the time the train left Branchville station, a distance of 300 yards from the point of the accident, Sinclair Joyner, who was killed, was in plain view of the employees and agents of the company who were in charge of the engine which inflicted the injury. Upon this point the case of *Railroad Company* v. *Sherman* was referred to with approbation by this court in *N. & W. R. R. Co.* v. *Harman's Adm'r*, 83 Va. 553, the court overruling the demurrer to the declaration in that case, which contained but one count, and that count a copy, names and dates excepted, of the first count in the case of *B. & O. R. R. Co.* v. *Sherman's Adm'r*. The authority of that case, therefore, is too well established to be successfully attacked in this court. The demurrer was properly overruled.

The next question to be considered arises upon the exception to the action of the trial court in giving instructions numbered 5 and 6, which are in the following words :

"No. 5. The court instructs the jury that if they believe from the evidence that Sinclair Joyner went upon the track of the defendant company without its consent, and placed himself thereon in such a position as to be struck by the train, then the said Joyner was a trespasser, and guilty of such contributory negligence as will prevent a recovery by his administrator in this action, unless the jury further believe that after his peril was discovered the injury could have been prevented."

"No. 6. The court instructs the jury that though the plaintiff may have been guilty of contributory negligence, and although that negligence may in fact have contributed to the accident, yet, if the jury believe from the evidence that the

Opinion.

defendant could in the result—that is, after it discovered his peril—by the exercise of proper care and due diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse it."

We do not think that the correctness of Instruction No. 6, as given by the court, can be successfully controverted. It enunciates a proposition which has been repeatedly approved by this court, that though the plaintiff may have been guilty of contributory negligence, and although that negligence may in fact have contributed to the accident, yet, if the jury believe that the defendant could in the result—that is, after it discovered his peril—by the exercise of proper care and due diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse it; and this, I take it, without regard to the fact that the contributory negligence of the plaintiff may have had its origin in a trespass upon the property of the defendant company. While the extent of the duty of the defendant company to look out for trespassers, and the degree of care to be exercised in ascertaining the peril of a trespasser, are the subjects of much controversy, it is well established that, when the danger to the trespasser is discovered, it is the duty of the defendant company to avoid doing him an injury, if that can be done consistently with the higher duty which it owes to the passengers and property directly committed to its care; and this I take to be the meaning of "due care and diligence," as used in the sixth instruction. What is proper care and due diligence is to be determined by reference to surrounding circumstances. What would be reasonable and prudent conduct in a given situation would, under changed conditions, be sufficient to warrant the imputation of negligence. It is unnecessary, however, to expatiate upon the subject, or to cite authorities in support of it, other than the case of *R. & D. R. R. Co.* v. *Anderson's*

*Adm'r*, 31 Gratt. 812, where the proposition embraced in this instruction is approved in terms almost identical with those used in this case.

Instruction No. 5 is substantially the same as No. 6, reference to which has just been made, except that the latter prescribes the duty which rested upon the defendant company, after the discovery of the plaintiff's peril, to be the exercise of "proper care and due diligence" to avoid the mischief; while No. 5 makes the railroad company responsible if the jury believe that, after the peril of plaintiff's intestate was discovered, the injury "could have been prevented."

It is contended that the terms used here would require the defendant company to exercise the highest degree of diligence with respect to a confessed trespasser, whereas the law only imposes upon it the duty of ordinary care. I do not think, in the first place, that this would be a fair interpretation of the language used. There is no reason why we should construe this instruction as meaning that the defendant should be liable unless the injury could have been prevented by the higher degree of care, if that degree of care was not imposed by the law upon the defendant under the facts and circumstances surrounding the parties at the time the accident occurred. Thompson on Charging Juries, sec. 131; *Benn* v. *Hatcher*, 81 Va. 25, 31. The reasonable construction would seem to be that the jury were to understand from it that the defendant's liability would attach, unless it used, after the discovery of the plaintiff's peril, that degree of care and diligence, in avoiding the mischief, which the law required, regard being had to the surrounding circumstances; and not a higher degree of care than the law imposed; that is to say, the "proper care and due diligence" to avoid the mischief which happened, which is expressed in terms in the instruction immediately succeeding. But suppose that the broader

interpretation be given the words "could have been pre-vented," and that they are to be understood as telling the jury that it was the duty of the defendant company to avoid running upon and over a human being trespassing upon the track of the defendant company, if, after the discovery of his position of peril, it were possible to do so by resorting to all the means within its power consistently with its duty to the passengers and train under its immediate protection; would that be erroneous? We think not, under the facts of this case. A railroad company may not owe to trespassers the duty of prevision or foresight to guard against their negli-gence, but, when the peril is discovered and brought home to the company, the duty to avoid the injury to them attaches, and should be measured and limited only by the higher and more imperative duties they owe to others. Hence it is said that a railroad engineer, after becoming aware of the presence of a person on the track, however unlawfully or imprudently, is bound to use the same care to avoid the injury to such person which he ought to use in favor of a person lawfully and properly upon the track. *Frayser's Adm'r* v. *D. & N. R. R.*, 81 Ala. 185; and *Needham* v. *Railroad*, 37 Cal. 409. We do not think, therefore, that it was error to give Instructions Nos. 5 and 6.

Nor is there any error in the refusal of the court to grant the instruction asked for by the plaintiff in error, and set out in Bill of Exceptions No. 3, which is in the following words:

" The court instructs the jury that if they believe from the evidence that Sinclair Joyner went upon the track of the defendant company without its consent, and placed himself thereon in such a position as to be struck by a train, then the said Joyner was a trespasser, and guilty of such contributory negligence as will prevent a recovery by his administrator in this action, unless the jury further believe that the accident was caused by the willful negligence of the company."

It will be observed that the hypothetical case upon which this instruction is predicated omits any reference to evidence upon the part of both plaintiff and defendant tending to prove that before the accident occurred the engineer became aware of the dangerous position of Joyner. The engineer himself admits that, when he had approached to within sixty yards of Joyner, he recognized that the object near the track was not an abandoned tie, as he had supposed, but a man, and that as soon as he made the discovery he used all proper efforts to avert the catastrophe. The evidence upon the part of the defendant in error tends to prove that when at a much greater distance from the body of the deceased, warning of danger was given, which it was the duty of the engineer to heed, but did not. In any aspect of the case, whether in that presented by the plaintiff or defendant, here was a most material fact for the consideration of the jury, upon their determination of which, under proper instructions, depends their reaching a just conclusion in this case. There may be a state of facts under which the instruction as presented would be good law, but, upon the evidence set out in this record, its tendency was to mislead the jury, and it was properly rejected by the court.

In what we have said with respect to the law of this case, we do not wish to be understood as questioning the correctness of the decisions in *Railroad Co.* v. *Sherman,* 30 Gratt. 602; *Railroad Co.* v. *Morris,* 31 Gratt. 200; *Railroad Co.* v. *Anderson,* 31 Gratt. 812; *Railroad Co.* v. *Harman's Adm'r,* 83 Va. 553; *Tyler* v. *Site's Adm'r,* 88 Va. 470, and same case reported in 90th Va. 539.

It is no longer an open question in Virginia that, except at crossings and places where the public have by law or custom, or by the acquiescence of the company, a right to the use of railroad property, the railroad company has the exclusive right to the uninterrupted enjoyment of its road-bed, track,

and other property. They owe no special duty to mere trespassers, but they cannot with impunity inflict upon them reckless or wanton injury ; and when it is said that they owe to trespassers only the duty of ordinary care, it is intended merely to say that trespassers are not entitled to that provident circumspection which, as far as possible, foresees and forestalls danger. That high degree of duty is owed to passengers only, but where the danger of the trespasser is discovered, it then becomes the duty of the railroad company to avoid the infliction of injury, without regard to the fact that the trespasser was himself guilty of contributory negligence. It is then incumbent upon the company to do all that can be done, consistently with its higher duty to others, to save the trespasser from the consequences of his own improper act.

The law upon this subject is, we think, properly stated in the 99th section of Shearman & Redfield on the Law of Negligence (4th ed.), where it is said that " the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief." See *Donahoe* v. *Railway Co.*, 83 Mo. 543 ; Bishop on Non-Contract Law, 1037 ; Beach on Con. Neg., p. 21.

The facts of this case present to our minds but little difficulty, under the rule by which we are governed in their consideration where a motion is made to set aside a verdict as contrary to the evidence.

It seems that about 2 o'clock on the 24th day of December, 1890, Sinclair Joyner was sitting or lying upon the side of the roadway of the defendant company, with his arm resting upon the north rail and his head lying in the hollow of his arm; that he was about 500 or 600 yards from Branchville station; that the day was clear and bright; that the track was straight, and the view from the station to Joyner wholly unobstructed, and that he was easily and plainly visible. A witness says that from Branchville station to a point further down the track a "chicken" could easily be seen. When the train moved out from Branchville station the alarm was given by a neighbor that Joyner was on the track and would be run over, and thereupon two colored men, Wiley Mason and Isham Davis, quit their work, ran to the track, one upon one side and one upon the other, Mason waving his hat at every step, and making every possible exertion to stop the train. He ran along the track not less than eighty yards, but all in vain. The engineer thinking, as he said, that these men were playing "Christmas tricks," did not apply the brakes or reverse the engine until it was too late. The unfortunate man, Joyner, was struck by some part of the engine, receiving a mortal wound, from which, in a few hours, he died.

The statement of this witness is of itself sufficient to sustain the verdict, under the rule just adverted to, but it receives strong confirmation from the testimony of other witnesses, some of whom testified on behalf of the plaintiff in error. The engineer admits that he saw the signals made by Mason; that he saw an object near the track, which he mistook for an abandoned tie; that he thought the signals had reference to some source of danger behind the people who were making them, and not between him and them. He seems, therefore, to have disregarded the warning first observed, and violated the rule of the company, which prescribes that "a flag or

Opinion.

lamp swung across the track, a hat or any object waved violently by any person on the track, signifies danger, and is a signal to stop."

The engineer says that he first saw Joyner, or rather that he first discovered what it was on the track, when within about sixty yards of him, and that then he blew brakes, reversed the engine, and gave a "little sand." According to his own account, therefore, he was within sixty yards of Joyner before he took any measures to stop the train, while, according to Mason's account, the witness ran at least eighty yards upon the track, waving his hat, before the train struck Joyner. There can be little doubt that a train, such as that is proved to have been, could have been brought to a stop while an old negro man was running eighty yards. If, as he said, he did not reverse his engine and whistle down brakes until within sixty yards of Joyner, he is certainly mistaken in saying that he whistled down brakes and reversed his engine as soon as he saw the signals by the witness. The only escape from this conclusion is to be found in the suggestion that he did not see Mason, and that, under the circumstances disclosed in this case, would of itself constitute very great negligence. He admits, however, that he did see him, but, instead of acting in obedience to the rule prescribed by his employer, he chose to doubt, to hesitate, and to consider as to what he should do, until he came within sixty yards of the unfortunate man, and then it was too late to repair the consequences of his negligence, and to avoid the accident.

When the engineer concluded that the time for action had come, he confessedly did all that was in his power to avert the accident. He ordered the brakes to be put down, he reversed his engine, and he opened the sand-box. The effect of these energetic measures was to cause the wheels to drag upon the track. Nothing more could have been done in the performance or discharge of any degree of diligence or duty.

All this, it seems, he did with entire safety to his train and passengers. The failure to do these things would have been wanton and reckless negligence under the circumstances. To do them under the circumstances was but due care and proper diligence. The highest care could set in motion no agencies to avoid the mischief not resorted to by the engineer when he realized Joyner's peril. His fault lay in not acting promptly upon evidences of danger forced upon his attention, which a reasonably prudent man would have acted upon, and, in this case, not to do so was, in our judgment, not only the want of reasonable care, but was reckless negligence.

We think the judgment of the Circuit Court is without error, and should be affirmed.

*Affirmed.*