Syllabus.

## �export Richmond.

BRAGG'S ADMINISTRATOR v. NORFOLK AND WESTERN R'Y CO.

March 21, 1910.

1. CARRIERS—*Railroads—Passenger—Employee Riding on Trip Pass.*
An employee of a railroad company riding on a trip pass, between his home and place of business, furnished by the company is entitled to be treated as a passenger.

2. CARRIERS—*Railroads—Passenger Carried Beyond Station—Helpless Condition—Ejection—Care of Carrier.*—A railroad company which has carried a passenger beyond his point of destination has the right to put him off, but if it knows that he is in a helpless and irresponsible condition, although voluntarily imposed, it should not exercise its right of removal at a time or place, or under circumstances, where he will be exposed to great hazard. The company must exercise its right with due regard to the life and safety of such passenger. If a passenger who is known to be in a helpless condition, mentally and physically, is removed from a train by the conductor and placed in charge of a station agent of the company, and the latter, knowing his condition and without effort to prevent it, permits him to wander off alone in a deep snow, when the weather is severe and night rapidly approaching, and die of exposure, the company is liable.

3. CARRIERS—*Railroads—Helpless Passenger—Place of Ejection—Negligence.*—A declaration which simply alleges that a passenger who had been carried beyond his destination, and who was mentally and physically incapable of caring for himself, was put off in the daytime, at a regular station where there was a depot, that he was not familiar with the place and that it was sparsely settled, but fails to aver that the weather was severely cold, or that the ground was covered with snow, or any fact showing that the character of the place was such as to make it dangerous, fails to show negligence on the part of the carrier, and is, therefore, bad on demurrer.

Error to a judgment of the Circuit Court of Rockbridge

county in an action of trespass on the case.    Judgment for the defendant.    Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*C. S. McNulty, H. S. Rucker* and *Glasgow & White,* for the plaintiff in error.

*Marshall McCormick* and *E. M. Pendleton,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages from the Norfolk and Western Railway Company for negligently causing, as is alleged, the death of the plaintiff's decedent.

The trial court held, upon demurrer, that neither of the two counts of the plaintiff's amended declaration stated a cause of action, and entered a final judgment in favor of the defendant company.

As the question involved in this writ of error arises on demurrer, we are only concerned with the averments of the declaration.    It is averred in substance in the first count that the plaintiff's intestate, who was the telegraph operator of the defendant at Lochlaird, a station near Buena Vista, on the line of its road running from the city of Roanoke to Hagerstown, Maryland, on the 24th day of December, 1908, went to his home in Roanoke city on a trip-pass issued to him by the defendant to travel from Buena Vista to Roanoke and return; that he remained at his home on that day until near 1:30 o'clock in the evening, when he boarded a passenger train of the defendant to return to his place of work; that when he entered the train he was more or less under the influence of some intoxicating liquor, or not in his right mind from other causes; that before the train reached Buena Vista he went to sleep, or for some other cause

became mentally irresponsible, and the defendant, through its negligence, failed to arouse him at that station or aid him in leaving the train, but carried him on to the second station beyond his point of destination where he was forcibly ejected from the train by the defendant when he was in a drunken and irresponsible condition, or had lost his reason, and was crazy from causes unknown to the plaintiff, and when he was, on account of his said condition, unable to take care of and protect himself against the natural, inevitable, and immediate dangers to which he was exposed from being ejected at a sparsely settled station where he was not familiar with his surroundings; that when he was ejected at that place, notwithstanding his said condition and surroundings, in violation of its duty to him the defendant failed to put him in a place of safety or in charge of someone who would look after and guard him against the said dangers when he was utterly incapable, mentally and physically, of protecting himself; that as the direct and natural result of the said negligence the plaintiff's intestate, being physically and mentally unable to care for and protect himself, wandered aimlessly in the cold, snow and darkness along and on the railroad track of the defendant until overcome by the cold and exposure he fell beside the track where he was found the next morning in an unconscious condition, and died that day. It is further averred that the said irresponsible condition, both mentally and physically, of the plaintiff's intestate at the time he was ejected and while he was on the train was known to the defendant.

The second count is substantially the same as the first, except that it contains the additional averments, that when the plaintiff's intestate was ejected from the train, night was rapidly approaching, the climatic conditions were severe, the ground being covered with about fifteen inches of snow; that the conductor and other agents of the defendant attempted, when the plaintiff's intestate was ejected, to place him under the care and protection of the station agent, in order that he might protect the decedent from the dangers into which he would naturally

be expected to fall in his then said irresponsible condition; that the station agent, knowing the irresponsible mental and physical condition of the decedent and that he had been placed in his care by the conductor and servants of the defendant to be cared for until the decedent could care for himself, wholly neglected to perform that duty, and declared that he did not have time to bother with a drunken or crazy man, and permitted and actually saw the plaintiff's intestate wander off alone in the rapidly declining afternoon, when the ground was covered with fifteen inches of snow, and negligently failed and refused to make any effort to prevent the decedent from wandering away when the natural, probable and inevitable result would be his death.

Whether or not the defendant company was negligent in not waking up and putting off the plaintiff's intestate at Buena Vista, his point of destination, or at the next station reached by the train, need not be considered, as the failure to put him off the train at either of those places was not the proximate cause of his death. It is clear that the plaintiff's intestate, whether his remaining on the train after he reached his point of destination was the result of the defendant's negligence, or of his mental and physical condition, was, under the averments of the declaration, entitled to be treated as a passenger. 4 Elliott on Railroads, sec. 1578-a; 2 Hutchinson on Carriers, secs. 1016, 1018.

When the defendant found that it had carried him beyond his point of destination, it had the right to put him off the train, though if it were negligent in carrying him beyond his station it would have been its duty to return him to that point; but if it knew that he was in a helpless and irresponsible condition in body and mind, it should not have exercised its lawful right of removal at a place or time, or under circumstances, where he would be exposed to great hazard.

Hutchinson on Carriers (3d ed.), sec. 1083, in discussing the subject of the right of a common carrier to eject females, sick or intoxicated passengers, says: "Female passengers and pas-

sengers who are sick or suffering from some mental or physical infirmity necessarily cannot be ejected at times and places where the carrier should know that their sex or condition would especially expose them to insult or injury. And this rule is true whether the attendant danger arises from natural infirmity of the person or was self-imposed. Thus, if a person on a train is so intoxicated as to render him unconscious of danger and unable to appreciate his position, surroundings and perils, and his duty to avoid them, or does not possess the power of locomotion, and is put off the train by the conductor on account of his misconduct, and the place where he is put off and left is dangerous to one in his condition, and these facts are known to the conductor, he would be guilty of recklessness and wanton negligence, rendering the company liable for damages resulting from his negligence, although the person ejected and injured might have been legally ejected in a proper manner and at a proper place. But in order to subject the company to liability for such an act the condition of the person so ejected must be such that it would reasonably indicate to the carrier's servants that he, on account of his condition and the surrounding circumstances, would be liable to injury by being left at the place where ejected."

It is well settled that all persons in the exercise of their rights, or in the performance of their duties, should exercise their rights or perform their duties with a reasonable regard for the preservation of human life and the prevention of serious bodily harm, or the infliction of unnecessary injury upon others, and that as a general rule they may be held responsible for the manner in which their rights are exercised or their duties performed.

The statement of the rule of law by Mr. Hutchinson is not only founded in reason but is fully sustained by the decided cases. See *L. & N. R. Co.* v. *Johnson,* 108 Ala. 62, 19 South. 51, 31 L. R. A. 372; *Isbell* v. *New York, &c., Ry. Co.,* 27 Conn. 393, 71 Am. Dec. 78; *Railway Co.* v. *Valleley,* 32 Ohio St. 345, 30 Am. Rep. 601; *Connoley* v. *Crescent City R. Co.,* 41 La.,

Ann. 57, 5 South. 259, 6 South. 526, 3 L. R. A. 133; *Indianapolis P., &c., R. Co.* v. *Pitzer,* 109 Ind. 179, 3 N. E. 310, 10 N. E. 70, 58 Am. Rep. 387; *Roseman* v. *Carolina, &c., R. Co.,* 112 N. C. 712, 16 S. E. 766, 34 Am. St. Rep. 524, 19 L. R. A. 327; *Louisville, &c., R. Co.* v. *Sullivan,* 81 Ky. 624, 50 Am. Rep. 186; *Brown* v. *Chicago, &c., R. Co.,* 51 Iowa 235, 1 N. W. 487; *Atchinson* v. *Weber,* 33 Kan. 543, 6 Pac. 877, 52 Am. Rep. 543; *Southern Ry. Co.* v. *Back,* 103 Va. 778, 50 S. E. 257; 4 Elliott on Railroads, sec. 1637.

In most, if not all the cases, where the railway company has been held negligent for the manner in which it exercised its right to eject a passenger or other person from its train, it appeared that there was something in the condition of the weather and of the place where he was ejected that would naturally imperil his safety in addition to his intoxicated condition.

In *L. & N. Ry. Co.* v. *Johnson, supra,* the passenger, who was very drunk, was ejected in a cut on the road where there was no escape except up or down the railroad track along the sides of which there was room for a person to walk. The night was dark and it was raining. At one end of the cut there were cattle guards which could be passed only by walking on the track. At this point the ejected passenger was struck and killed by a train.

In *L. & N. R. Co.* v. *Sullivan, supra,* the injured person, who was helplessly drunk, was expelled not at a station and in the snow.

The first count in the declaration under consideration wholly fails to aver any facts either as to the weather or the character of the grounds in and about the station. It alleges in general terms that the intestate was not familiar with the place, and that it was sparsely settled. These allegations do not, in our opinion, show that the defendant was guilty of negligence in ejecting the intestate at that point. He was ejected in the daytime, at a regular station of the defendant where there was a depot. It is not averred that it was severely cold or that the ground was

covered with snow, nor is any fact averred which shows that the character of the place was such as made it dangerous.  We are of opinion, therefore, that the court properly sustained the demurrer to that count.

The second count, we think, states a good cause of action.  In addition to the averments of the first count it states that the intestate was ejected when night was rapidly approaching, the climatic conditions severe, the ground covered with fifteen inches of snow; and that the conductor and other servants of the defendant, on account of the intestate's condition and surroundings, attempted to place him in the care and protection of the station agent of the defendant; that the station agent, knowing the decedent's condition and that he had been placed under his care and protection until he was capable of taking care of himself, neglected and refused to care for him, but permitted, and actually saw the intestate in his irresponsible condition wander off alone down the railroad track without making any effort to prevent it, although he had full knowledge of the intestate's irresponsible condition, and the dangers which surrounded him.

The judgment of the trial court must be reversed, its judgment set aside, and such order entered by this court as the trial court ought to have entered, sustaining the demurrer to the first count, overruling it as to the second, and remanding the cause for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*