SUSAN M. FULP, Administratrix of Westley Fulp, deceased, v. THE ROANOKE AND SOUTHERN RAILROAD COMPANY.

*Action for Damages—Railroad Crossings—Negligence—Contributory Negligence.*

1. Where, in the trial of an issue as to whether defendant railroad company negligently killed the intestate of plaintiff, the court, after properly instructing the jury that the burden of showing the negligence was on the plaintiff, told the jury that if defendant's engineer gave a warning whistle at the crossing, or if the intestate was down upon the track, drunk or unconscious, so that no signal given at the usual safe and ordinary distance would have aroused him in time for him to avoid the result, there was no negligent killing; *Held,* that such charge was erroneous for the reason that it connected the intestate's negligence with that of the defendant so that it cannot be seen whether the jury passed on defendant's negligence, and for the further reason that it put upon plaintiff the burden of proving that her intestate was not negligent.

2. On the trial of an issue as to contributory negligence of a person killed on a railroad track by a train, the trial judge instructed the jury that, if the intestate failed to note the approach of the train because he was drunk and was killed in consequence, he was guilty of contributory negligence; *Held,* that such charge was erroneous for the reason that it did not require the jury to pass upon the question whether, notwithstanding intestate's negligence, the defendant could, by the exercise of proper care, have averted the killing.

CIVIL ACTION for damage for the alleged negligent killing of a plaintiff's intestate by defendant, tried before *Hoke, J.*, and a jury, at December Term, 1896, of FORSYTH Superior Court. There was a verdict for the defendant, and from the judgment thereon plaintiff appealed.

*Mr. J. S. Grogan*, for plaintiff (appellant).
*Messrs. Watson & Buxton*, for defendant.

FURCHES, J.: This is an action for damages, in which the plaintiff, administratrix, alleges that defendant negligently ran over and killed her intestate, Wesley Fulp. The killing was admitted to have been done by a freight train on defendant's road, in the night time, near a public crossing about one mile north of Denney. The train that killed the intestate was going south, and struck the intestate ''30 or 40'' yards north of the crossing. There was a curve in the road just before reaching the crossing. Lacy, the engineer, was introduced by the defendant and testified: ''I was engineer. I had twelve or fifteen freight cars that night. It was a few minutes after schedule time. I didn't know anything of having injured any one until next morning. I was in my proper place—could not have seen persons going along the track forther than 50 yards, because the head light would help me no further than that. The signs the next morning showed that the man was on the left side of the track. There were no signs on the cow catcher to show that it had struck him, but back of the cow catcher and attached to the frame of the trucks on bolts that project downward, lower than the cow catcher. The cow catcher would pass over a man lying down inside of the rail, but these bolts would not. These bolts on the left side had blood on them and fibres of clothing, showing they had struck the deceased and that he was lying down.

I could not have seen a man lying on the left side of the track that night, from my position on the engine. I sounded the whistle and rang the bell before reaching that crossing—it is a part of my duty."

Another witness testified that the engineer could not have stopped the train after turning the curve "before running 60 or 70 yards past the crossing." But Lacy, the engineer, and witness of defendant, does not say a word as to whether he could have stopped the train or not.

A witness (Charles Marshall) testified that he lived on the road between Walnut Cove and where the intestate was killed; that the intestate was at his house that night just after dark; was drinking; threw up at his house; wanted witness to go with him to show him the way to his mother's, but witness refused to do so; deceased left and went towards the road; he told him not to do so; heard the whistle of the engine at Walnut Cove; deceased went on; this was about 15 minutes before the train passed; deceased had walked a quarter of a mile after this before he was killed by the defendant's train.

It was the duty of the engineer to sound the whistle for this crossing, and there was evidence tending to show that he did not sound the whistle, while there was evidence tending to prove that he did sound the whistle, and the court properly submitted this question to the jury under the first issue.

The court submitted the following issues to the jury, and they were answered as indicated:

1. "Was the plaintiff's intestate negligently killed by the defendant company? Answer: No."

2. "Was the intestate guilty of contributory negligence? Answer: Yes."

3. "What damage is the plaintiff entitled to recover?"

The court charged the jury that the burden of proof to

establish the first issue was upon the plaintiff, and the burden to establish the second issue was upon the defendant. This was correct, and is not complained of by the appellant, and we cite no authority to sustain a ruling that we consider correct and of which there is no complaint.

But the court further charged upon this *first* issue: "To recover on this issue the plaintiff must satisfy the jury from the greater weight of evidence that there was a failure to sound the whistle, and that such failure caused the killing, and if the defendant did give the warning whistle, or if at the time the intestate was down upon the track drunk or unconscious, so that no signal given at the usual safe and ordinary distance would have aroused the intestate in time to have enabled him to avoid the result, there was no negligent killing and the issue should be answered 'No.'" Plaintiff excepted.

The court then proceeded to charge the jury on the second issue, telling them that the burden to establish *this* issue was upon the defendant. And, among other things, he charged them as follows: "If the intestate was going along the railroad on his route of travel in the night time, and about the schedule time of trains, more especially if he was warned that a train was near, and was run over and killed at a point away from the crossing, this would be a negligent act, and, if killing followed as a consequence (this), issue should be answered 'Yes.' Plaintiff excepted."

"Or, if the intestate's failure to note the approach of trains was in whole or in part, because he was drunk, and was run over and killed in consequence, this would be contributory negligence and the jury should answer the second issue 'Yes.' Plaintiff excepted."

The court no where in the charge given to the jury places any responsibility on the defendant, except it was the defendant's duty to sound the whistle at the crossing. And

while the Judge submits this to the jury, he connects it with the drunkenness and negligence of the intestate, so that we are unable to see whether the jury passed upon the question of sounding the whistle or not  As he says, in his charge upon the first issue, and as a part of the same sentence in which he charges negligence, if the defendant did not sound the whistle, "or if at the time the intestate was down upon the track drunk or unconscious so that no signal given at the usual safe and ordinary distance would have aroused the intestate in time to have enabled him to avoid the result, there was no negligent killing and the issue should be answered 'No.' "  This instruction was given in the charge upon the first issue and is erroneous:

First—For the reason that it so connects the intestate's negligence with the negligence of the defendant, as to whether the defendant sounded the whistle or not, that it cannot be seen whether the jury passed upon the defendant's negligence or not.

Second—For the reason that it put the burden on the plaintiff, of proving that the intestate was not guilty of contributory negligence, though he had charged that the burden of proving the intestate's negligence was on the defendant.

The charge on the second issue is in conflict with *Pickett* v. *Railroad*, 117 N. C., 616; *Lloyd* v. *Railroad*, 118 N. C., 1010, and every case on this subject to be found in our reports, except it may be *Smith* v. *Railroad*, 114 N. C., 728, and cases there cited, and this case has been expressly overruled.

There was *no* evidence showing or tending to show but what the intestate was killed within thirty or forty yards of the crossing.  Indeed, the defendant proved this.  So there was no evidence to justify the court in charging that if the intestate "was run over and killed at a point away

120—67

from the crossing, this would be a negligent act, and killing followed as a consequence, this issue should be answered Yes." And this instruction is erroneous for that reason—that it was without any evidence to support it.

But the great error of the charge is, that it is in violation of that great principle in favor of human life, so thoroughly settled in this State and in every jurisdiction, that the jury shall pass upon the acts of the defendant, where negligence is alleged, and upon the contributory negligence of the intestate, if that is alleged. This has not been done in this trial. . We have shown that it has not been done, as to sounding the whistle, in a sufficiently intelligible way to be understood whether it was passed on or not.

But more than that, the court below does not require any care on the part of the defendant. There is not one word said in the charge as to the defendant's duties, except what is said about sounding the whistle. The jury is not told that, though the intestate may have been guilty of negligence by going on the defendant's road whether drunk or sober, it was still the duty of the defendant's engineer to be in his place, on the lookout, and if he saw the intestate or could by due diligence have seen him in time to stop the train and save the life of the intestate, it was his duty to do so; and if he did not, he was guilty of negligence—"the last clear chance,"—and the defendant would be liable. *Pickett* v. *Railroad, supra,* and cases there cited; *Lloyd* v. *Railroad, supra.*

Instead of giving this charge, as pointed out in so many cases in our own reports, he charged the jury that "if the intestate's failure to note approaching trains was in whole or in part because he was drunk, and was run over and killed in consequence, this would be contributory negligence, and the jury should answer the second issue 'Yes.'" This

puts the whole case upon the intestate's being drunk. And if this charge were sustained, it would be a free license to every railroad company in the State to run over and kill every drunken man that got on its road, whether the conductor saw him or not—a doctrine, it seems to us, too shocking to be insisted upon.

It is true that the engineer (Lacy) says that he was at his post, and that the head light enabled him to see for fifty yards. But the intestate was on the *left hand side* of the track, but between the rails, which are about four feet apart. And on this account, he (the engineer) being on the *right hand side*, could not see the intestate, and ran over and killed him, and did not know he had done so until the next morning. And suppose he did swear to this state of facts, was his word to be taken as absolutely true, so as to render it unnecessary to submit the question to the jury? Why should his testimony not be submitted to the jury, as is the testimony of other witnesses?

For the errors pointed out there must be a new trial.

New Trial.