## WHITESIDES v. SOUTHERN RAILWAY CO.

(Filed May 14, 1901.)

1. NEGLIGENCE — *Evidence — Sufficiency — Railroads — Questions for Jury.*

   The evidence in this case is sufficient to have been submitted to the jury on the question whether the defendant was negligent in not seeing the intestate of plaintiff on the trestle, or, if it saw him, in not stopping and caring for him.

2. NEGLIGENCE—*Railroads—Track—Trestle.*

   It is negligence on the part of the employees on a train, where a person on a trestle is struck without their knowledge.

3. NEGLIGENCE—*Railroads—Track—Trestle—Personal Injuries.*

   Where a person on a trestle is struck by a train, it is negligence not to stop and care for him.

4. NONSUIT—*Contributory Negligence—Evidence.*

   In case of nonsuit evidence of contributory negligence should not be considered.

   COOK, J., dissenting.

ACTION by Lethia Whitesides against the Southern Railway Company, heard by Judge *E. W. Timberlake,* at Spring Term, 1901, of the Superior Court of McDOWELL County. From a judgment for the defendant, the plaintiff appealed.

*E. J. Justice,* and *Morris & Morgan,* for the plaintiff.
*George F. Bason,* for the defendant.

FURCHES, C. J.   Action by an administratrix under the statute for damages.   The plaintiff alleged that her intestate

was killed, or injured, by the negligence of the defendant, from which he died.    The evidence disclosed these facts:

The plaintiff's intestate was seen on the streets of Marion about 8 o'clock at night; that he lived near defendant's road, west of Marion, and west of Bailey's trestle across a small stream, about a mile and a quarter west of Marion, and 40 or 50 feet high; that defendant's westbound vestibule train, according to schedule time, was due at Marion about 11 o'clock at night; that it was on time that night and passed over Bailey's trestle shortly after 11 o'clock; that it was a cold night in January and the ground was slightly covered with snow; the next morning the intestate was found under the bridge upon a sill of the trestle, with one thigh broken and with some other bruises about his body, and a little greasy spot on the sleeve of his coat that looked like it might have come off an engine.    The evidence showed that he had been in the creek, as his clothing was wet and frozen upon him, and there were signs of a drag, showing that he had dragged himself out of the creek and onto the sill, which was some three or four feet above the water.    Some of the witnesses stated that he was under the bridge, while others spoke of his being on the side of the bridge.    He was found early next morning, but was not dead when found; that some time after he was found, the defendant's depot agent at Marion was notified of his condition, but gave the matter no attention until about 10 o'clock in the day, when he went to the trestle and had the intestate removed to his home where he died that evening.    Two doctors testified that he probably died from the exposure.    The plaintiff also put defendant's answer in evidence.

The defendant offered no evidence, and moved, at the close, of plaintiff's evidence, to nonsuit the plaintiff, which motion was allowed, and she appealed.

The plaintiff puts her appeal on two grounds : That defendant was negligent in running over the intestate while on the trestle; and for not stopping the train and caring for the intestate who, as plaintiff alleges, died from exposure and want of attention in his helpless condition.

We do not think the plaintiff's first ground—the negligent running over the intestate—is sustained by the evidence, as there is no evidence offered to show that the intestate was seen, nor as to the condition of the road approaching the trestle so as to show negligence in the conductor's not seeing him in time to have prevented the injury.

But if the intestate was on the trestle and was stricken by the train, it was negligence in the defendant not to have seen him. *Arrowood v. R. Co.,* 126 N. C., 629; *Powell v. R. Co.,* 125 N. C., 374. Of course it must be shown that the intestate was on the road when he was injured, or there could be no negligence in defendant's not seeing him. This is the turning point in the case, because, if the defendant knocked the intestate off the trestle and knew it had done so, and went on without stopping to look after and care for him, especially on such a night as that, that was such negligence as would make the defendant liable for the result. Black on Contributory Negligence (Ed. 1885), page 221; *Railroad v. State,* 29 Md., 420; 96 Am. Dec., 545. If the intestate was on the trestle, and struck by the train while on the trestle, and the defendant did not see him when struck, this was negligence, because the defendant must have seen him if the engineer had kept a proper lookout. And this negligence would make the defendant liable for the injury resulting from such negligence.

Then, was the intestate on the bridge when defendant's train passed over it? There is no direct evidence showing that he was, and it is suggested that he was not. It is also suggested as evidence in support of this claim that he was

not on the trestle; that if he had been stricken by the train he would have been injured much more than he was. It is also suggested that when the intestate found he was about to be overtaken by the train, he let himself down through the trestle and was injured by the fall; or, that he jumped from the trestle and was injured in that way. It may be true that the intestate was injured in some one of the ways suggested.

But the defendant in its answer says "that one of defendant's regular trains, No. 35, was due to pass the trestle *upon which plaintiff was injured,*" etc. This answer was offered in evidence, and plaintiff contends that this, together with the other evidence in the case, was sufficient to carry the case to the jury.

And when we consider that, in case of nonsuit, evidence of contributory negligence can not be considered, and that the evidence must be considered in the most favorabe light for the plaintiff, we are of the opinion that the case should have gone to the jury.

Error. New trial.


COOK, J., dissenting. Plaintiff's intestate was found on the side of a creek under the trestle, which was about 75 feet long and 35 to 50 feet high. From impressions in the sand and on bank of the creek, it appeared that he had crawled or dragged himself out of the water upon the sill on which he was found. When found, there was no evidence of injury done him, except that his leg was broken; nor was there any evidence of his having been injured by the train, other than a spot or place on his coat sleeve which looked like grease from an engine. He was partly frozen and died from the exposure. The night of the injury, some one was heard going along defendant's railroad track in the direction of the trestle, a short time before the westbound vestibule train passed. During the night, and after the train had passed, one of the wit-

nesses (Poteat) and members of his family heard cries of distress. Next morning the witness, after feeding his cow and horse, walked down to the trestle and saw intestate lying upon the sill, and went off and delivered a message about providing a fire, and returned after eating his breakfast.

Plaintiff insists, first, that intestate was knocked off the trestle by defendant's train carelessly and negligently; second, if it were not done carelessly and negligently, then his death was caused by its negligence in not stopping its train and caring for him after committing the injury. There is no evidence showing that he was knocked off by defendant's train, but plaintiff insists that there is evidence of the fact from the circumstances under which he was found, and the following part of defendant's answer which was put in evidence by plaintiff and relied upon as an admission: "The defendant, further answering, says, that at the time the plaintiff was killed he knew, or could by reasonable diligence have known, that one of defendant's regular trains, to-wit, No. 35, westbound, was about the trestle upon which plaintiff was injured, and notwithstanding this notice he took the risk of using said trestle as a foot-path."

It appeared from the evidence of plaintiff's witnesses that people were forbidden by defendant to walk upon the trestle, and it was generally so known, and at each end of the trestle a notice, printed in large letters, was posted, forbidding people to do so. Notwithstanding, some people, including some of the witnesses, did at times walk across it, but the fact is not shown to have been known or consented to by the defendant. There was no public crossing near the trestle which required the signal to be given, nor was it necessary or incumbent upon the defendant to give it at that point. *Unusual* watch and vigilance in approaching and passing over it, were not imperative upon the engineer. It was not incumbent upon the defendant to give the warning signals when ap-

proaching it. If intestate was knocked off by defendant's train, then it was incumbent upon plaintiff to show that defendant *could* have seen intestate, had its engineer kept a proper lookout; that intestate was in *such* a position and at *such* a place that the engineer *could* have seen him, and *ought* to have seen him, had he been vigilant, and could have stopped the train in time to prevent injury; for negligence is not presumed from the mere fact that damage was done. *Herring v. Railroad,* 32 N. C., 406. There is no evidence to show that the engineer did see him, or that intestate was in such a position or place that he could possibly have done so. Whether intestate could have seen by the vigilant eye, or, in trying to extricate himself from his imperiled position, got into such a position or place upon or under the cross-ties, beams or other part of the structure, that he could not possibly be seen, does not appear. In the absence of such evidence, no presumption of negligence is raised against the defendant.

It is the duty of a railroad company not to wilfully injure a trespasser, and to use due care to prevent injury after discovering his danger and inability to escape, if such care would have prevented the injury (Elliott on Railroads, vol. 3, sec. 1253, 1254), of which there is no evidence. It is not to be expected that people will enter upon such parts of the track as they are forbidden to do, and therefore those who thus wrongfully enter to do so at such times and places when and where the *utmost* vigilance is not required, and they have no right to claim such care and vigilance as are due to persons lawfully exercising a right or privilege.

The facts in this case differ from those in many of the cases cited. In *Arrowood v. Railroad,* 126 N. C., 629, the intestate was killed upon that part of the track where "the public were in the habit of using the railroad * * * as a passway"; therefore "a greater degree of care would be required of defendant in running its trains at this point than the de-

fendant would have exercised in running its train along the track where the public had not been habitually permitted to use the track as a pass-way." At the trestle where the intestate was injured, the public had not been permitted to pass, but, on the contrary, had been forbidden to enter upon it.

In *Powell v. Railroad,* 125 N. C., 370, the train was passing through a populous town of 2,500 or 3,000 inhabitants, and the engineer failed to give the signal at either of the two crossings or for the station, running 25 to 30 miles an hour; and in *Fulp v. Railroad,* 120 N. C., 525, the intestate was killed within 20 or 30 yards of a public crossing, at such point where the engineer is required to give the warning signal (about which the evidence was conflicting) and keep a vigilant lookout, because of the mutual *right* of the public to *there* enter upon and cross defendant's track, and where the presence of people may be looked for and expected.

In *Cox v. Railroad,* 123 N. C., 604, the intestate was killed within 12 feet of a *public* foot-path, habitually used, in a town and no signals given.

There being no evidence of negligence in inflicting the injury and none presumed by law, I can not see how the second cause of action can be maintained for not stopping and caring for a man whose injured condition was not known by defendant. Nor am I able to find any principle of law which requires a wrong-doer to care for the person whom he has wronged. The failure to do so, causing more direful results, aggravates the wrong *done,* which is covered in the measure of damages. The injury and damage being done *without fault,* to alleviate pain, suffering and death appeals to the feelings of humanity, for which the good Samaritan has always been revered and extolled to the shame and condemnation of the Priest and Levite who looked on and passed by without rendering succor to the sufferer; but history fails to show that a breach of the Levitical law could have been

claimed; nor do I find it to be a cause of action existing under our jurisprudence. I have been unable to find Black on Contributory Negligence (Edition 1885), to which our attention was called on the argument, but the case of *Northern Central Railroad Co. v. The State,* use of Price, 29 Md., 420; 96 Am. Dec., 545, fails to sustain the contention of the plaintiff. In that case Price was injured at a depot where the train did not stop, and lodged upon the pilot of the engine in an unconscious state, apparently dead. In that condition the railroad company took him into its custody, assuming that he was dead, did not send for a physician to make an examination of the nature and extent of his injuries, nor notify his family or any person who would take an interest in him, but locked him up in a warehouse used for storing barrels and plunder, where he remained all night, notwithstanding that it was suggested at the time that the man ought to be examined, and that the place was unfit. Thus imprisoned by the company and excluded from the knowledge and aid of all persons, vital activity asserted itself, the blood began to flow, the restoration of consciousness ensued, and he was found dead next morning some distance from the place he had been put, his body being in a stooping posture, holding his right leg with his hand, having died from hemorrhage of the arteries of his right leg, which was crushed at and above the knee. It was for and on account of this gross neglect *after* taking him into custody and depriving him of every opportunity of relief by others, that the Court held the railroad company liable—none of the elements of which exist in the case at bar. At no time did the defendant have the custody of intestate, or assume for him any responsibility or liability. Nor does it appear that it ever knew of the existence of an injury done him.

I will not advert to the conduct of those who heard the cries of distress uttered by intestate during the night, and

their failure to furnish him relief until nearly ten o'clock next day. Neither sympathy nor substance can now avail him. So I have confined my inquiry to the principles of law as applicable to the evidence, and, there being no evidence to prove negligence upon the part of defendant in inflicting the injury, I fail to find any error in the ruling of his Honor in nonsuiting the plaintiff.