183 So.2d 328 (1966)
248 La. 982
Ben M. LEE
v.
PEERLESS INSURANCE COMPANY et al.
No. 47816.
Supreme Court of Louisiana.
February 23, 1966.
*329 H. F. Sockrider, Jr., Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for applicant.
Joseph R. Bethard, Shreveport, for respondent.
FOURNET, Chief Justice.
We granted a writ of certiorari[1] on plaintiff's application in order that we might review the judgment of the Court of Appeal for the Second Circuit affirming the judgment of the trial court dismissing, on defendants' peremptory exception of no cause of action[2] (based on allegations of the petition assertedly disclosing plaintiff contributed to his own injury), his suit to recover damages from the defendant nightclub owner and the owner's insured for injuries sustained when he was hit on the highway by a moving vehicle after having been ejected from the nightclub adjacent to the highway in an intoxicated condition. See, 175 So.2d 381.
The operative facts giving rise to the cause of action as set out in plaintiff's petition are succinctly summarized in his counsels' brief in this court as follows:
"On the afternoon of June 27, 1963, relator and friends arrived in Shreveport, Louisiana, for both business and pleasure. At about 9:00 o'clock p. m., they went to Sak's.[3] Upon his arrival, relator was `under the influence of liquor,' having previously `imbibed some alchoholic beverage;' however, `he was not drunk, but to the contrary, was rational and in control of his faculties.' From 9:00 o'clock p. m. until 1:00 o'clock a. m. relator was repeatedly `coaxed to drink and plied with drinks by employees of Sak's,' until he became so intoxicated that `he could barely walk, falling down a number of times.' This coaxing and plying continued in spite of Sak's employees' knowledge and awareness of relator's helplessness and befuddlement, until the number of drinks consumed reached somewhere between 30 and 40.
"When it came time for Sak's to close (around 1:30 o'clock a. m.), relator `was required to leave the building of Sak's' and he was `turned out on its premises adjacent to Highway 80.' This was done by the employees of Sak's notwithstanding their full awareness of `his inability to look after himself.' Immediately following this ejectment relator wandered into Highway 80, where `on account of his helplessness' and his inability to `take account of traffic,' he was run down by a vehicle travelling thereon."
In the alternative, plaintiff invokes the last clear chance doctrine based on the following allegations as summarized in brief, and which are asserted to be the heart of relator's cause:
"* * * shortly after 9:00 o'clock p. m. a point in his intoxication was reached when the employees of Sak's were `well aware of his condition and knew that continued drinking was deleterious and harmful' to him. He continues by alleging that *330 had Sak's employees desisted in their negligence at that time, which it was their duty to do, relator `would have regained his faculties' prior to the time he was ejected; that is, between then (9:30 p. m.) and the time he was ejected (1:30 a. m.), he would have sobered up sufficiently to exercise self-protective care."
The rule of law universally obtaining, and controlling under our jurisprudence,[4] is succinctly set out in Corpus Juris Secundum as follows:
"At common law, and apart from statute,[5] no redress exists against persons selling, giving, or furnishing intoxicating liquor, or their sureties, for resulting injuries or damages due to the acts of intoxicated persons, whether on the theory that the dispensing of the liquor constitutes a direct wrong or constitutes actionable negligence * * *. This rule is based on the theory that the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it." 48 C.J.S. Intoxicating Liquors § 430, p. 716. See, also, 65 C.J.S. Negligence § 143, p. 784; 30 Am.Jur. 824, Intoxicating Liquors, Section 525; 54 A.L.R.2d 1152.
However, counsel for plaintiff contend that Louisiana, by the adoption of R.S. 26:88,[6] abrogated this common law rule and created, by implication, a right to recover civil damages in those persons intended to be protected thereunder irrespective of the defense of contributory negligence, as such statutes have, in other states, been interpreted in the light of Sections 285, 286, and 483 of the Restatement of the Law of Torts, Second Edition,[7] and it is clear thereunder that R.S. 26:88 was intended to protect not only the public, but an incompetent, such as an intoxicated person, against his own incompetency.
An exhaustive research of all of the cases on this subject, including those relied on by plaintiff,[8] reflects the law to be as *331 hereinabove stated, and from our appreciation of the legislative intent in adopting Act 360 of 1948, on which Title 26 of the Revised Statutes, is predicated, we cannot say this body thereby abrogated the common law in this respect and created, by implication, a right to recover civil damages in those persons not entitled to recover such damages under the common law, as has been done by a number of the states, among whom are, in particular, those now or formerly having civil damage or "dramshop" statutes,[9] and upon whose jurisprudence in this respect plaintiff's counsel largely rely.[10]
As was very aptly pointed out by Prosser in his work on torts, whether contributory negligence "* * * is a bar to the liability of a defendant who has violated a statutory duty is a matter of the legislative purpose which the court finds in the statute. If it is found to be intended merely to establish a standard of ordinary care for the protection of the plaintiff against a risk, his contributory negligence with respect to that risk will bar his action, as in the case of common law negligence." Section 64, page 435, of the Third Edition.
Louisiana has never had on its statute books a civil damage or "dramshop" act, and has never adopted a code based on the American Law Institute's model Restatement of the Law of Torts. Article 26:88 of the Revised Statutes is criminal in nature, levying a fine and/or imprisonment for its violation, although it does specifically *332 provide that violation of the acts therein prohibited shall be ground for the suspension and revocation of permits, as does R.S. 26.89 also, which is headed: "Additional causes for suspension or revocation of permits." For us to hold that R.S. 26:88, by implication, abrogates the common law on this subject, as contended by counsel representing the plaintiff, would require us to exercise legislative prerogatives which, under our state and national constitutions, the judiciary is prohibited from doing. See, Ramsey v. Anctil, 106 N.H. 375, 211 A. 2d 900, decided in July 1965 in New Hampshire.
Had the legislature intended this result by the adoption of its Act 360 of 1948 and R.S. 26:88, it could have said so in a few plain and simple words. Our conclusion that such a result was not intended is fortified by the fact that although there have been for a number of years decisions at the appellate court level invoking and following the common law in this respect, although this court has heretofore had no case in point presented to it, the legislature, although meeting with regularity since these decisions, has taken no steps to adopt clarifying legislation or require this extraordinary care of intoxicated persons frequenting public places selling and dispensing alcoholic beverages. See, McAllister v. Travelers Ins. Co., La.App., 121 So.2d 283; Robinson v. Fidelity & Casualty Co., 135 So.2d 607, certiorari denied by us; Manuel v. United States Fire Ins. Co., La. App., 140 So.2d 702. See, also, for an excellent exposition of the law in this respect the landmark case of Cole v. Rush, 45 Cal. 2d 345, 289 P.2d 450, 54 A.L.R.2d 1137.
A mere reading of the cases relied on by plaintiff[11] as the basis for invoking the doctrine of last clear chance, designed to protect persons who negligently place themselves in a position of peril or danger, easily reflects they are inapplicable to the facts of this case, and, therefore, not controlling, as this doctrine can be invoked only where the person inflicting the injury for which damages are sought (1) actually discovered the peril of the injured party or was in a position to discover it, and (2) could, at that time, have avoided the accident by the exercise of ordinary or reasonable care. See, the annotation at 26 A.L.R.2d 308.
For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reinstated and made the judgment of this court.
SANDERS, Justice (dissenting).
This case raises serious questions vitally affecting delictual responsibility in Louisiana. Because of its importance to our jurisprudence, I must record my dissent. I do so with utmost deference to the views of my brethren, who have dismissed the suit without trial.
Plaintiff Lee sustained disabling injuries when an automobile struck him on the highway *333 bordering Sak's nightclub, after he had been ejected from the club in an intoxicated condition. He sued Kimmerly, owner of Sak's, and Peerless Insurance Company, his insurer, for damages.
The petition alleges: Sak's is a night club located on U. S. Highway 80 in Bossier Parish. The highway serves as the only exit from the night club premises. It is a four-laned, transcontinental highway, heavily traveled by vehicles moving at a high rate of speed.
Sak's offers late evening entertainment in its Boom Boom Room, built around the sale of intoxicating liquor through waitresses who coax customers to drink.
At about nine p. m. on June 27, 1963, plaintiff Lee went to Sak's Boom Boom Room with friends. Although Lee had been drinking alcoholic beverages before that time, he was not yet intoxicated. He ordered a few drinks, and thereafter, coaxing him to drink more, the waitresses plied him with liquor.
He became very intoxicated. He fell down a number of times, breaking his watch in one fall. This erratic behavior took place under the eyes of the night club employees.
Despite plaintiff's visible intoxication, the waitresses continued to coax him to buy drinks throughout the evening. By 1:30 a. m., closing time, he had consumed thirty to forty drinks of intoxicating liquor, rendering him "helpless mentally and almost physically," to the knowledge of Sak's and its employees.
Although Sak's was fully aware of his helpless condition and his inability to look after himself, he was "required to leave" the building and was "turned out" on its premises adjacent to U. S. Highway 80, the only egress. He wandered into the highway and, because of his helplessness, could not "take account of traffic." He was run down and seriously injured on the highway slightly south of Sak's.
Plaintiff particularizes the negligence of Sak's employees as follows:
"a) Selling alcoholic beverages to plaintiff while he was obviously intoxicated, in violation of LSA-R.S. 26:88. * * *
"b) Causing the helplessness hereinafter referred to by coaxing plaintiff to buy and by selling to plaintiff alcoholic beverages when he was obviously intoxicated.
"c) Coaxing plaintiff to buy and consume alcoholic beverages after it became obvious he was mentally and almost physically helpless, thus accentuating and intensifying said condition of helplessness.
"d) Forcing plaintiff to leave a position of relative safety inside Sak's and move to a position of great danger outside Sak's in close proximity to a heavily traveled highway; said latter position being obviously acutely dangerous for plaintiff because of his helplessness which they had caused.
"e) Abandoning plaintiff in front of Sak's, well knowing he was in a place of excessive hazard where serious injury to him was foreseeable and almost inevitable, all after having procured plaintiff's drunkenness to the point where he could not look after himself."
Plaintiff alleges "said acts of negligence were a proximate cause of the * * * accident and injuries to plaintiff."
Plaintiff further alleges a point had been reached shortly after 9:00 p. m. when plaintiff ceased to "know and to be able to" stop drinking. Although the club's employees knew of his intoxication and knew that further drinking would be harmful, they continued to sell and serve him drinks. Had they refused to sell him any more drinks, as was their duty under the law, he would have regained his faculties by the time he *334 was evicted from the club, thereby avoiding injury.
Alternatively, plaintiff pleads Last Clear Chance.
To the petition, the defendants filed a peremptory exception of no cause of action, asserting "the allegations of plaintiff's petition herein affirmatively allege that he was guilty of contributory negligence which was a proximate cause of the accident complained of."
The district court sustained the exception and dismissed the suit. The Court of Appeal affirmed the judgment. That court concluded the intoxicated plaintiff removed himself from a place of safety to the highway, and consequently his contributory negligence barred his recovery. See 175 So. 2d 381. This Court now affirms the judgment maintaining the exception on two grounds:
(1) An injured patron of a nightclub liquor vendor has no cause of action in Louisiana against the vendor based upon the unlawful or negligent sale of intoxicating liquor to the patron, because such sale is not the proximate cause of an injury arising from alcohol-induced incompetence.
(2) The petition discloses plaintiff's contributory negligence, which bars his recovery.[1]
I shall consider separately the questions posed by these diverse holdings.
Does plaintiff have a cause of action against defendants in the absence of a disclosure of contributory negligence barring his recovery?
As the outset, I note the exception of no cause of action pleads only contributory negligence. Under our jurisprudence, the pleading implies a cause of action would exist in plaintiff's favor but for his own negligence cooperating with that of the defendant to produce the injury. The pleading concedes defendant's causal fault, or primary negligence. Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L.R.A. 334, 104 Am.St.Rep. 455; Gilliam v. Lumbermens Mutual Casualty Co., La. App., 119 So.2d 657, revd. on other grounds, 240 La. 697, 124 So.2d 913; Althans v. Toye Bros. Yellow Cab Co., La.App., 191 So. 717; Burmaster v. Texas Pacific-Missouri Pacific T. R. R., La.App., 174 So. 135; Howard v. Rowan, La.App., 154 So. 382; 65 C.J.S. Negligence § 198, pp. 922-923.
Apparently complying with the foregoing rule, the Court of Appeal "assumed" defendant's primary negligence, and neither party briefed the question in this Court. However, I do not rest my dissent on this formal concession of the pleader, though I could properly do so, for I am strongly convinced the petition alleges a primary cause of action.
The action is founded upon Articles 2315 and 2316 of the Louisiana Civil Code, which provide:
"Art. 2315. Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * *."
"Art. 2316. Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
For a cause of action under these articles, the petition must show fault, causation, and damage. The exception of no cause of action admits all well-pleaded allegations of the petition.
Defendant has not questioned the injury or damage allegations.
The fault requirement is sometimes divided into duty and breach of duty. As I view *335 it, the petition adequately alleges defendant's breach of at least three duties he owed plaintiff.
The first duty relied upon by plaintiff is statutory. The Alcoholic Beverage Control Law prohibits a retailer from selling or serving alcoholic beverages to an intoxicated person. LSA-R.S. 26:88(2). Such a prohibition is consistent with the demands of ordinary prudence.
In this Court, as in the Court of Appeal, the plaintiff strongly maintains contributory negligence is no defense to a violation of LSA-R.S. 26:88(2), because the statute is designed to protect intoxicated persons from their inability to exercise self-protective care. He relies upon Section 483, Restatement of Torts, and decisions from Florida, New Jersey, and Pennsylvania, holding contributory negligence no defense to infractions of similar statutes. Davis v. Shiappacossee, Fla., 155 So.2d 365; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 208; Schelin v. Goldberg, 188 Pa. Super. 341, 146 A.2d 648; Majors v. Brodhead Hotel, 416 Pa. 265, 205 A.2d 873.
Nothing in the statute or its history evinces a legislative intent to abolish the defense of contributory negligence. Hence, I agree that contributory negligence is available as a defense to a violation of the statute. See Ramsey v. Anctil, 106 N.H. 375, 211 A.2d 900 and Prosser, Torts, § 64, p. 435 (3d ed. 1964).
The statute, however, does fix a standard of care. It was designed, at least in part, to protect intoxicated patrons, as a class, from helplessness and incompetence. The statute embodies a legislative judgment that an intoxicated patron is a menace to himself. Plaintiff's injury was the type of harm the statutory restriction was intended to prevent. Hence, the alleged statutory violation constitutes fault, or negligence per se, under Articles 2315 and 2316 of the Louisiana Civil Code. Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252; Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298; Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; Lee v. Carwile, La.App., 168 So.2d 469; Moses v. Mosley, La.App., 146 So.2d 263; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 208; Schelin v. Goldberg, 188 Pa.Super. 341, 146 A.2d 648; Stone, Tort Doctrine in Louisiana: The Concept of Fault, 27 Tulane L.Rev. 1, 3-4; James, Statutory Standards and Negligence in Accident Cases, 11 Louisiana Law Review 95.
The Court of Appeal stated the rule applicable here with extraordinary precision in Moses v. Mosley, supra:
"[W]here a statute is enacted to protect the class of persons in which the plaintiff is included against the type of loss or injury which in fact has been sustained, an unexcused violation of such a statute is `negligence per se' * * *."
In countering the liability from defendant's breach of the foregoing statutory duty, the majority holds "controlling" the common law rule that an injured inebriate has no redress against the vendor of intoxicating liquor for illegal or negligent sales to him for the reason that "the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it."
I do not agree that we are bound by the common law rule. But if we must summon a common law rule to our assistance, we should first determine whether the rule is sound and whether the common law offers a choice of rules.
The theory that the sale of liquor is not a proximate cause of plaintiff's injury is unsound.
Factual causation is quite clear. Defendant's conduct is a cause-in-fact of plaintiff's harm when it is a substantial factor in producing that harm. Home Gas & Fuel Co. v. Mississippi Tank Co., supra; Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646. Here, the defendant illegally sold the liquor that induced plaintiff's intoxication disabling *336 him from evading the automobile. But for the unlawful sale of liquor after 9:00 p. m., so the petition alleges, the plaintiff would have regained his faculties by the time of eviction, and the accident would have been avoided. Defendant's negligent conduct was a necessary antecedent to plaintiff's injury. Hence, the sale of liquor was a substantial factor in producing the harm, or its factual cause.
Referring specifically to proximate causation, Article 12 of the petition alleges defendant's "acts of negligence were a proximate cause of the herein described accident and injuries to plaintiff." When one goes behind the allegation, a proper analysis shows plaintiff's consumption of liquor did not supersede defendant's negligence as a cause of plaintiff's harm, or reduce that negligence to a non-proximate cause.
Pertinent here is the accepted rule that a foreseeable intervening act is not a superseding cause and does not relieve the original wrongdoer from liability. Jackson v. Jones, 224 La. 403, 69 So.2d 729; 38 Am. Jur. Negligence § 70, p. 726. The petition adequately alleges defendant's employees actually coaxed the plaintiff and induced him to drink after plaintiff became visibly intoxicated. This means, of course, that the consumption of the liquor was necessarily foreseeable.
Additionally, the violation of a statute is not rendered remote as a cause of an injury by the intervention of an act which is a normal incident of the risk against which the statute was designed to protect. The essence of "proximate cause" in statutory violations is whether the risk and harm encountered fall within the scope of protection of the statute. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298; 38 Am.Jur. Negligence § 167, p. 841; Annotation, 100 A.L.R. 2d 942, 965-966; Green, Rationale of Proximate Cause, 142-144 (1927); McDonald, Proximate Cause in Louisiana, 16 Louisiana Law Review 391.
In Dixie Drive It Yourself Sys. v. American Beverage Co., supra, this Court laid bare the essential inquiry:
"`The presence of causes intervening subsequent to defendant's act which brings about injury presents no special problem. In such cases, the inquiry of the court is simply whether the risk produced by the combination of defendant's act and the intervening cause is one which is within the scope of protection of the rule of law upon which plaintiff relies.'"As I have observed, the present statute was intended to prevent harm to intoxicated persons, resulting from their helplessness and incompetence. The Legislature prohibits the sale of liquor to them, because in the legislative judgment, an intoxicated person's heedless consumption of liquor is expectable. Excessive liquor consumption is an incident of the risk against which the Legislature sought to guard. Such post-intoxication consumption falls within the scope of protection of the statute. Thus, the essential relationship between defendant's negligence and plaintiff's harm, usually called "proximate cause," is fully satisfied. The intervening consumption cannot relieve defendant from liability.
Having concluded the common law rule of no-proximate-causation is unsound, I now note the common law itself offers a choice of rules. Most, if not all, the recent decisions have abandoned the earlier rule. See, e. g., Schelin v. Goldberg, 188 Pa.Super. 341, 146 A.2d 648; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 208; Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821; Ramsey v. Anctil, 106 N.H. 375, 211 A.2d 900; Majors v. Brodhead Hotel, 416 Pa. 265, 205 A.2d 873; Smith v. Clark, 411 Pa. 142, 190 A.2d 441; Jardine v. Upper Darby Lodge No. 1973, 413 Pa. 626, 198 A.2d 550; Waynick v. Chicago's Last Department Store (U.S. 7 Cir.) 269 F.2d 322, cert. denied 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554. See also 20 Louisiana Law Review 800 and 49 Minnesota Law Review 1154.
*337 In Soronen v. Olde Milford Inn, supra, the New Jersey Court said:
"The duty to the visibly intoxicated persons is both common law and statutory. Intoxication is a state of impairment of one's mental and physical faculties due to overindulgence in alcoholic drink. A person in that condition is unable to exercise normal powers of judgment and prudence. He is a potential menace, not only to himself but to others. Common sense requires that a tavern keeper refuse to serve alcoholic drink to such a person. This common law principle is carried into our Alcoholic Beverage Control Act which, through implementing regulations, specifically prohibits a licensee from serving alcoholic drink to a person actually and apparently intoxicated. We conclude that plaintiff's complaint sets forth a justiciable cause of action."
A second duty, invoked by plaintiff but apparently overlooked in the majority opinion, arises from the invitor-invitee relationship. Defendant caters to the public in his night club operations. The standard of conduct to which he must conform to discharge his duty to his customers is that of a reasonable man under like circumstances. LSA-C.C. Arts. 2315, 2316; Peters v. Great Atlantic & Pacific Tea Co., La.App., 72 So.2d 562. His patrons are drinking and drunken persons. Unstable and erratic conduct on their part is expectable. Intoxication is a circumstance that demands increased care to avoid injury to the inebriate and satisfy the above standard. Kimbrell v. American Indemnity Co., La.App., 56 So.2d 880; 38 Am.Jur. Negligence § 39, p. 684. Malone, Contributory Negligence and the Landowner Cases, 29 Minnesota Law Review 61, 72.
The duty requires, at the very least, that defendant refrain from conduct increasing the peril to, or worsening the situation of, his intoxicated patron. So if the invitor ejects his intoxicated patron into an environment made hazardous by known dangers, such as arctic cold, highway traffic, or railroad tracks, and foreseeable injury results, the invitor is guilty of actionable negligence. Weymire v. Wolfe, 52 Iowa 533, 3 N.W. 541; Houston v. Strickland, 184 Va. 994, 37 S.E.2d 64, 165 A.L.R. 537; Fagg's Adm'r v. Louisville & N. R. Co., 111 Ky. 30, 63 S.W. 580; Fagan v. Atlantic Coast Line R. Co., 220 N.Y. 301, 115 N.E. 704, L.R.A.1917E 663; Johnson v. Louisville & N.R. Co., 104 Ala. 241, 16 So. 75; Bragg v. Norfolk & W. Ry. Co., 110 Va. 867, 67 S.E. 593; Prosser, Torts, § 54, p. 339 (3rd ed., 1964). Cf. Depue v. Flateau, 100 Minn. 299, 111 N.W. 1; Black v. New York, N. H. & H. R. Co., 193 Mass. 448, 79 N.E. 797.
In his treatise, supra, Dean William L. Prosser summarizes the law of these and other decisions:
"[T]here is at least a duty to avoid any affirmative acts which make his situation worse. When we cross the line into the field of `misfeasance,' liability is far easier to find. * * * There may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; but it is another thing entirely to eject him into the danger of a railroad yard; and if he is injured there will be liability."
In the present case, defendant's employees knew of plaintiff's helpless state of intoxication. Despite this, they evicted him from the club into the area beside the exit highway, where they should have anticipated he would wander into the highway[2] and where serious injury was "foreseeable and almost inevitable." The defendant became a peril-maker. Without attempting to enumerate the safer alternatives available to the defendant, I do believe that placing the plaintiff in the hands of the police would have been an act of prudence and humanity.
*338 Defendant maintains the business-invitor has no duty to protect a customer after he has left the premises. This is a correct statement of a general principle. But it has no application here. Defendant breached his duty by conduct on the premises before plaintiff's removal.
The breach of a third duty is amply supported by the petition. Defendant had a duty to avert the harmful consequences of his illegal sale of intoxicating liquor to the plaintiff. Well recognized in tort law is the principle that when a person acts and subsequently realizes or should realize the act has created an unreasonable risk of physical harm to another, he has a duty to use reasonable care to avoid the harm. Restatement, Second, Torts, § 321; Northern Central Railway Co. v. State, 29 Md. 420, 96 Am.Dec. 545; Trombley v. Kolts, 29 Cal.App.2d 699, 85 P.2d 541; Whitesides v. Southern Ry. Co., 128 N.C. 229, 38 S.E. 878; Ward v. Morehead City Sea Food Co., 171 N.C. 33, 87 S.E. 958; Zickefoose v. Thompson, 237 Mo.App. 690, 157 S.W.2d 259; Montgomery v. National Convoy & Trucking Co., 186 S.C. 167, 195 S.E. 247; Simonsen v. Thorin, 120 Neb. 684, 234 N. W. 628, 81 A.L.R. 1000. Compare Standard Oil Co. v. Crowl, (U.S. 8 Cir.) 198 F.2d 580.
The failure of the majority to consider two of the three duties involved in this case has resulted in the resolution of only a fragment-issue. So based, the adjudication is not truly definitive of the rights of the parties.

Does plaintiff's petition disclose contributory negligence barring his recovery?
The Court of Appeal decided only the question raised in the exception: Does the petition disclose contributory negligence barring plaintiff's recovery?
We restated the rule applicable to this question in Gilliam v. Lumbermens Mutual Casualty Company, 240 La. 697, 124 So.2d 913:
"In Louisiana, as elsewhere, contributory negligence is a defense which bars recovery in cases arising ex delicto but it must be specially pleaded by the defendant in his answer in order to be considered and need not be negatived in the petition. Guillory v. Horecky, 185 La. 21, 168 So. 481; Althans v. Toye Bros. Yellow Cab Co., La.App., 191 So. 717 and cases there cited. Nevertheless, there is a well-recognized exception to this rule which pertains only in cases where the affirmative allegations of the petition conclusively show that the plaintiff, as well as the defendant, was at fault and that plaintiff's negligence was a contributing cause of the accident, which would not have occurred but for such negligence. In these matters, the issue of contributory negligence may be raised by way of peremptory plea or exception of no cause of action addressed to plaintiff's petition. See Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238 and cases there cited. However, in order for a suit to be dismissed on an exception, it must appear not only that the negligence of plaintiff has been affirmatively alleged but also that the recitals of the petition are such as to exclude every reasonable hypothesis other than that such negligence was the proximate cause of the accident. * * *" (Italics mine.)
Plaintiff's failure to "take account of traffic" as he wandered into the exit-highway would be contributory negligence barring his recovery in the absence of other overriding legal doctrines. On the special facts of this case, however, such overriding doctrines rush to plaintiff's aid.
A review of the decisions involving intoxicated plaintiffs in analogous fact situations discloses that the courts uniformly *339 reject the defense of contributory negligence on various grounds. Kimbrell v. American Indemnity Co., La.App., 56 So. 2d 880; Weymire v. Wolfe, 52 Iowa 533, 3 N.W. 541; Houston v. Strickland, 184 Va. 994, 37 S.E.2d 64, 165 A.L.R. 537; Fagan v. Atlantic Coast Line R. Co., 220 N.Y. 301, 115 N.E. 704, L.R.A.1917E 663; Yazoo & M. V. Ry. Co. v. Byrd, 89 Miss. 308, 42 So. 286; Johnson v. Louisville & N. R. Co., 104 Ala. 241, 16 So. 75; Bragg v. Norfolk & W. Ry. Co., 110 Va. 867, 67 S.E. 593; Black v. New York, N. H. & H. R. Co., 193 Mass. 448, 79 N.E. 797; Galvin v. Jennings (U.S. 3rd Cir.) 289 F.2d 15; Gaylord Container Corporation v. Miley (U.S. 5th Cir.) 230 F.2d 177; McClean v. University Club, 327 Mass. 68, 97 N.E.2d 174; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 208; Cincinnati, N. O. & T. P. Ry. Co. v. Marrs' Adm'x., 119 Ky. 954, 85 S.W. 188; McDonough v. Buckeye S. S. Co., (D.C.N.D.Ohio) 103 F.Supp. 473.
In the present case, plaintiff has pleaded Last Clear Chance, suggesting that by discontinuing the sales of liquor after 9:00 p. m., the defendant had a reasonable chance to avoid harm to plaintiff. However, this doctrine need not be specially pleaded. Lemaire v. Pellerin, La.App., 102 So.2d 493. Because of the plea of contributory negligence, we are required to determine whether the doctrine of Last Clear Chance applies at any point. See LSA-C.C.P. Article 2164. The doctrine of Last Clear Chance is well-established in Louisiana and represents an exception to the general rule that plaintiff's contributory negligence bars his recovery. Jackson v. Cook, 189 La. 860, 181 So. 195; Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209.
The circumstances surrounding plaintiff's eviction highlight defendant's last clear chance. For at the time defendant evicted plaintiff into the zone of peril and during the interval plaintiff remained on the premises thereafter, defendant could reasonably have avoided the harm but failed to do so.
It is true that a voluntarily intoxicated person is held to the same standard of conduct as a sober person for determining negligence. Huckaby v. Bellow, La.App., 175 So.2d 914; Manuel v. United States Fire Insurance Company, La.App., 140 So.2d 702; 38 Am.Jur. Negligence § 203, p. 883; 23 Louisiana Law Review 305.
If a person, however, is in an advanced state of intoxication such as to render him helpless, or incapable of self-protective care, the law accords him the benefit of the doctrine of Last Clear Chance. See Jackson v. Cook, 189 La. 860, 181 So. 195; Blackburn v. Louisiana Ry. & Nav. Co., 144 La. 520, 80 So. 708; McGuire v. Vicksburg S. & P. R. Co., 46 La.Ann. 1543, 16 So. 457; Grennon v. New Orleans Public Service, Inc., 10 La.App. 641, 120 So. 801; and Small v. Boston & M. R. R., 85 N.H. 330, 159 A. 298. An impressive collation of the decisions from all jurisdictions supporting this rule is found in 26 A.L.R.2d 308. The rule does not require the inebriate to be supine and immobile. His disability to guard himself from danger is the vital consideration. See Jackson v. Cook and Mc-Guire v. Vicksburg S. & P. R. Co., supra.
The petition describes plaintiff thus: "could barely walk, falling down a number of times," "helpless mentally and almost physically," "[unable] to look after himself," "could not take account of traffic," and "helpless." These allegations, in my opinion, place the plaintiff within the announced rule of Last Clear Chance.
The petition tells the story of a helpless, intoxicated plaintiff exposed to peril. The defendant knows of the plaintiff's situation. He likewise realizes or should realize plaintiff is unlikely to avoid harm because of his extreme intoxication. Nonetheless, the defendant fails to use an opportunity to avoid harm to the plaintiff. Hence, the doctrine of Last Clear Chance applies. Jackson v. Cook, 189 La. 860, 181 So. 195; Weymire v. Wolfe, 52 Iowa 533, 3 N.W. 541; Gaylord Container Corporation v. Miley, 230 F.2d 177 (U.S. 5th Cir.); Galvin *340 v. Jennings, 289 F.2d 15 (U.S. 3rd Cir.); 2 Harper & James, Torts, § 22.13, pp. 1245-1246 (1956).
In Weymire v. Wolfe, supra, a defendant saloon keeper expelled the intoxicated and helpless patron from a saloon at a late hour on an extremely cold night. The patron died of cold and exposure. The Iowa Court reversed a verdict in favor of defendant based on erroneous instructions, stating:
"The petition states, and the evidence tended to show, that Dunn was expelled from the saloon at a late hour of the night, drunk and unconscious, and died by reason of exposure and cold. If it should be conceded that Dunn contributed to his death by drinking until he became drunk and unconcious, it would not follow that the plaintiff would not be entitled to recover. If a person lies down upon a railroad track in a state of helpless intoxication, the company will not be justified in running a train over him, if it can be avoided in the exercise of reasonable care, after the person is discovered in his exposed condition."
Defendant argues the present suit is not against a vehicle operator who fails to avoid striking a helpless pedestrian in his path, the typical case of Last Clear Chance. Rather, it is one against a night club owner, whose employees were not at the scene of the highway accident at the precise moment of injury. Moreover, defendant emphasizes that the last conduct preceding the impact of the vehicle was plaintiff's. Hence, he reasons the doctrine of Last Clear Chance does not apply.
These contentions are without merit.
The doctrine of Last Clear Chance is not restricted to the man behind a steering wheel. It also applies to the man behind a broken duty, whose affirmative conduct puts a helpless plaintiff in the path of the automobile. The doctrine applies to negligent defendants who fail to use a fair opportunity to avoid harming contributorily negligent plaintiffs. The opportunity need not wait until the automobile is upon the plaintiff.
Plaintiff's final movements do not defeat Last Clear Chance. Under this humanitarian doctrine, the law looks to plaintiff's incapacity rather than to his antecedent conduct. As the Court stated in Small v. Boston & M. R. R., 85 N.H. 330, 159 A. 298. "While a sober person cannot have the benefit of the last chance rule which an intoxicated person may by reason of his incapacity, there is no favor to the latter. It is the situation of incapacity, however it arises, that invokes the duty of saving action by the defendant."
Another legal doctrine, perhaps reinforcing Last Clear Chance but certainly serving as an independent basis for rejecting the defense of contributory negligence, is the comparative duty analysis. I deal here with the non-statutory duties. The invitor's first duty was to refrain from conduct worsening the situation of the intoxicated plaintiff. His second duty was to use reasonable care to avert harm to the intoxicated plaintiff. These duties arose from the antecedent relationships of the parties. They presuppose plaintiff's intoxication and helplessness. If plaintiff had been sober, defendant would have had no such duties. That plaintiff did act irresponsibly, then, does not bar his recovery. The rule plaintiff violated does not relieve defendant of his obligation. The law does not build a duty and then tear it down merely because it must be used for its intended purpose. Kimbrell v. American Indemnity Co., La.App., 56 So.2d 880; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 808; Houston v. Strickland, 184 Va. 994, 37 S.E.2d 64, 165 A.L.R. 537; Green, Contributory Negligence and Proximate Cause, 6 North Carolina Law Review 3.
Using a duty analysis in Kimbrell v. American Indemnity Co., supra, the Court of Appeal rejected the contributory negligence defense and allowed recovery to an intoxicated prisoner, who was injured when *341 a police officer negligently slammed the cell door on his finger. The court reasoned:
"Interrelated with the question of negligence in this case is the plea of contributory negligence strenuously urged on behalf of defendant. It must be conceded, as contended by learned counsel, that voluntary intoxication does not relieve one from the effects of his own negligence. 65 C.J.S., Negligence, § 143, page 784; 38 Amer.Juris. 883. However, the facts of the instant case do not bring the proposition within the general rule. This is an instance in which the intoxicated condition of the plaintiff, as we have above observed, required unusual care on the part of the city's agents and employees. Certainly the officer was justified in using whatever force was necessary in confining his prisoner, but there was no justification for his lack of care which resulted in injury. Nor is there ground for refusing relief to plaintiff since the facts clearly indicate that in his condition he was not able to take care of himself."
In Soronen v. Olde Milford Inn, supra, the Court denied the defense of contributory negligence in an action based upon an intoxicated patron's fatal fall, saying:
"It is obvious that in the ordinary sense it is one's own fault if one gets drunk, but the postulation of the tavern owner's duty in such a situation assumes implicitly that there has been such fault on the part of the drinker and nevertheless imposes the protective duty. * * * [W]e conclude * * * the very nature of plaintiff's common law cause of action and of defendants' duty is such as to preclude the defense of contributory negligence."
In an incisive analysis of contributory negligence, 6 North Carolina Law Review 3, 18, Dean Leon Green observes:
"The courts are called upon to define the scope of the respective rules involved. They cannot be offset one against the other. This is a matter of defining the scope of legal rules based upon what, for the the lack of ability to enumerate all the factors to be taken into consideration, we call sound policy. If the rule which a plaintiff has violated does not give a defendant relief from an obligation owing plaintiff imposed by some other rule of law, then such contributory negligence, however clear a causal relation can be traced between it and plaintiff's hurt, affords defendant no ground of defense. The respective rights and duties of the parties are turned on much more important factors than mere causal relations."
Plaintiff's conduct does not bar his recovery as a matter of law. Hence, the exception of no cause of action should be overruled and the case should be remanded for further proceedings according to law.
For the reasons assigned, I respectfully dissent.
NOTES
[1] 248 La. 120, 176 So.2d 451.
[2] Sections 922, 923, and 927 of the Louisiana Code of Civil Procedure.
[3] As pointed out in the brief, Sak's Lounge is alleged to be a tavern in Bossier City, Louisiana, offering late evening entertainment which is built mainly around the sale of intoxicating liquors, and where female waitresses are employed for the specific purpose of coaxing customers to buy and imbibe liquors. It is situated immediately adjacent to U. S. Highway 80, a four-laned transcontinental route which is heavily travelled by rapidly moving vehicular traffic, and which is the sole means of egress from Sak's.
[4] In interpreting and carrying out the purposes of our basic law as set out in Article 2315 of the R.C.C., Louisiana has followed the common law in tort cases.
[5] It seems some 29 states have had civil damage or "dramshop" acts on their books, i. e., Arkansas, Colorado, Connecticut, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Washington, West Virginia, and Wisconsin. See, Cole v. Rush, 45 Cal.2d 345, 289 P.2d 450, 54 A.L.R.2d 1137. Although many of these have been repealed, the substance of the jurisprudence is retained in some states, with great reliance being placed on Section 483 of the Restatement of the Law of Torts, or provisions in alcohol control laws are interpreted in the light of this jurisprudence and the restatement. See, Schelin v. Goldberg, 188 Pa.Super. 341, 146 A.2d 648. Other states hold the repeal of these statutes results in a return to the common law rules. See, Ramsey v. Anctil, 106 N.H. 375, 211 A.2d 900.
[6] The pertinent portion of R.S. 26:88 is: "No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises: * * * (2) Sell or serve alcoholic beverages to any intoxicated person."
[7] Section 285 provides the standard of conduct of a reasonable man may be established by legislative or regulatory provisions, by judicial interpretation of such provisions, by judicial decision, or by judge or jury application of facts in a given case. The pertinent portion of Section 286 provides courts may adopt as the standard of conduct of a reasonable man the requirement of legislative or regulatory provisions "to protect a class of persons which includes the one whose interest is invaded." Section 483 provides: "The plaintiff's contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, unless the effect of the statute is to place the entire responsibility for such harm as occurred upon the defendant."
[8] The authorities cited on this point are: Schelin v. Goldberg, 188 Pa.Super. 341, 146 A.2d 648; Smith v. Clark, 411 Pa. 142, 190 A.2d 441; Jardine v. Upper Darby Lodge No. 1973, Inc., 413 Pa. 626, 198 A.2d 550; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 208; Galvin v. Jennings, 3 Cir., 289 F.2d 15, applying New Jersey law; Waynick v. Chicago's Last Dept. Store, 7 Cir., 269 F.2d 322, 77 A.L.R.2d 1260; and Davis v. Shiappacossee, 155 So.2d 365.
[9] In brief counsel state the authorities relied on are not from states having civil damage or "dramshop" acts, yet a reference to them, as pointed out in the previous footnote, reveals the first 4 are from Pennsylvania, the next 2 from New Jersey, and the next arose in the federal courts in Illinois, for an accident occurring in Michigan, all of these states being among those listed in Footnote No. 5 and there discussed. In this last case, the federal court, finding a vacuum existed because the Illinois "dramshop" act could not apply to an accident occurring in Michigan, and the Michigan alcohol control law could not apply to a sale made in Illinois, stepped into the vacuum to rule in favor of third persons injured by intoxicants in Michigan, where the accident occurred, purportedly under existing Michigan common law, although it relied heavily on the Illinois "dramshop" act to establish the sale to the intoxicants was unlawful and plaintiffs, as third persons, were part of the general public intended to be protected thereunder. The last case cited (Davis v. Shiappacossee) is from Florida, which has no such statutes. However, the decision rests on the fact a dealer sold beer and whiskey to an immature minor while he was sitting with two teenage friends in a car, likened by the court to a dangerous instrumentality, on the basis of a previous holding that a minor, to whom firearms were sold contrary to law, could recover for injury sustained when the gun was accidently discharged. But see the later case of Reed v. Black Caesar's Forge Gourmet Rest. Inc., Fla.App., 165 So.2d 787, also from Florida, in which recovery was denied for the death of an adult stemming from the sale of liquor to him, the common law being followed. States following the common law generally make a distinction between minors and adults in this field.
[10] Creating rights never arising under common law, civil damage and "dramshop" acts must cover the party seeking redress unless a more liberal view is applied under Section 483 of the Restatement of the Law of Torts. The consumer of liquor is, therefore, usually excluded, rights of action being given to third persons injured by the intoxicant, or to the intoxicant's surviving widow and children. See, 48 C.J.S. Intoxicating Liquors, p. 718, beginning with § 431. As pointed out in Footnote No. 5, states where these laws have been repealed usually interpret the recent alcohol control laws in the light of the jurisprudence thereunder, or simply follow that jurisprudence. Others hold repeal of such statutes revives the common law rules with respect to contributory negligence. Many cases refer to the split of authority in holdings in the field, but fail to point out the split stems from these statutory provisions.
[11] In Jackson v. Cook, 189 La. 860, 181 So. 195, damages were sought by a plaintiff who, walking along the road in an obviously intoxicated condition, was hit by a motorist on the highway, this court holding it is the "first duty of those who operate engines or motor vehicles * * * to keep a sharp lookout ahead to discover the presence of those who might be in danger." In the instant case this law would apply to the motorist on the highway who actually struck the plaintiff. In Russo v. Texas & P. Ry. Co., 189 La. 1042, 181 So. 485, a deaf man walking along a railroad track was struck from behind by a train, the decision resting on the fact that although the trainmen saw decedent in time to stop, and also saw he was unmindful of the approaching train, they did nothing to prevent the tragedy until too late to effectively stop. In McClean v. University Club, 327 Mass. 68, 97 N.E.2d 174, a guest sued the innkeeper for obligations arising under contract, as well as tort, for eviction prior to expiration time for which a room was rented, and who was in an obviously ill condition at the time he was made to leave. The doctrine of last clear chance was neither raised nor mentioned, the decision being based on the contract.
[1] This holding is implied by the majority's consideration and rejection of the doctrine of Last Clear Chance. That doctrine becomes pertinent only after a finding of contributory negligence.
[2] See Atchison, T. & S. F. R. Co. v. Parry, 67 Kan. 515, 73 P. 105; Prosser, Torts, § 33, p. 173 at n. 2 (3rd ed., 1964).